## GEORGE v. COMMISSIONER OF INTERNAL REVENUE.

### No. 12783.

Circuit Court of Appeals, Eighth Circuit.

July 17, 1944.

Abraham Lowenhaupt, of St. Louis, Mo. (R. S. Doyle, of Washington, D. C., Norman Begeman and Lowenhaupt, Waite, Chasnoff & Stolar, all of St. Louis, Mo., and Blair & Korner, of Washington, D. C., on the brief), for petitioner.

Ray A. Brown, Sp. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen.,

Sewall Key, J. Louis Monarch, and L. W. Post, Sp. Assts. to Atty. Gen., on the brief), for respondent.

Before GARDNER, JOHNSEN, and RIDDICK, Circuit Judges.

GARDNER, Circuit Judge.

This is a petition to review a decision of the Tax Court of the United States determining a deficiency in petitioner's income tax for the calendar year 1939, in the sum of $39,383.64. The facts were stipulated and as stipulated embodied in findings entered by the Tax Court.

On December 23, 1939, petitioner created a trust under the terms of which he transferred to trustees 640 shares of the capital stock of the P. D. George Company, a corporation. He named himself and two other individuals as trustees. The trust instrument provided that the assets of the trust should be divided into seven parts. The income of the first of these parts was to be paid to one son, Pericles Francis George, in quarterly or other convenient installments for life, or in certain contingencies not here important to his wife and children, and on his death the corpus was to be distributed to his then living children and to the descendents of any child then dead. The entire net income of the remaining six parts was to be paid to the six other sons equally in quarterly or other convenient installments until five years after the death of the taxpayer, when the corpus of those parts then remaining was to be distributed to the six sons, or in the event of their death, to their descendents. In the event of the death of any of the grantor's seven sons leaving no descendent then living, the share held for such son should go to the others of the grantor's seven sons and to the descendents then living of any of them who may have died. If all of grantor's six sons and the said children of Pericles Francis George should die before their respective shares had been paid over to them free from trust, and no decedent of any of them should be living to take the trust estate, then upon the death of the last survivor of them and said Pericles Francis George, the trust estate should be paid over and distributed to the persons who might then be the heirs at law of the grantor according to the laws of the State of Missouri.

Article six of the trust instrument provides as follows:

"These trusts are created and the interests of the beneficiaries, hereinbefore set out, shall be vested, but subject however to divestiture as follows:

"1. The Grantor may at any time and from time to time modify or alter this indenture and the disposition of the trust property and the estates and interests therein created and the income arising therefrom, but in the following particulars only:

"(a) By disposing of the income derived after any such modification or alteration becomes effective otherwise than as originally provided in this indenture, or otherwise than as provided by any amendment, by altering the proportion or amount of such income to be paid to or applied to the use of any one or more of the beneficiaries, by cancelling the share of any one or more of the beneficiaries, by cancelling the share of any one or more of the beneficiaries in whole or in part, by substituting any beneficiary or beneficiaries in the place of any one or more of them, by adding to the number of beneficiaries, by providing for the proportion or amount of income to be paid or applied to the use of such additional or substituted beneficiaries; provided, however, that in no event shall any such modification or alteration (one or more) direct, permit or allow the said income to be accumulated for or paid or applied to or for the use or benefit of the Grantor.

"(b) By directing the distribution of the principal of any of the trust estates, as the same shall be constituted at any time, otherwise than as originally provided in this indenture, or otherwise than as provided by any amendment, by altering the proportion or the amount of the principal of any of the trust estates to be assigned, paid, and set over to any one or more of the beneficiaries, by cancelling the share of any one or more of the beneficiaries in whole or in part, by substituting any beneficiary or beneficiaries in the place of any one or more of them, by adding to the number of said beneficiaries, by providing for the proportion or amount of the principal of any of the trust estates to be assigned, paid, and set over to such additional or substituted beneficiary, or for the manner in which all or any part of said principal shall be divided or distributed upon the termination of the trusts; provided, however, that in no event shall any such modification or alteration direct, permit or allow any part of the principal of the trust estates to be paid or applied to or for the use or benefit of the Grantor or his estate.

"(c) Any modification or alteration of this indenture provided for in subdivisions (a) or (b) of this Article Six must be by instrument in writing duly executed by the Grantor and delivered to the Trustees and shall become effective thirty (30) days next following the delivery of such instrument.

"2. The Grantor may at any time and from time to time direct the Trustees to distribute, free from trust, any share of a beneficiary, in whole or in part, to the beneficiary who shall be then entitled to the income currently distributable therefrom; provided, however, that any such direction must be by instrument in writing duly executed by the Grantor and delivered to the Trustees, and shall become effective on the delivery of such instrument, and the Trustees shall immediately make distribution as in such instrument directed."

During the taxable year the youngest of petitioner's sons was twenty-nine years of age and the oldest was forty-three years of age, and for many years prior to the creation of the trust and continuously thereafter the seven sons had been married and lived apart from the petitioner. During 1939 and for a number of years prior thereto, each of the seven sons had an independent income in addition to his share in 1939 of the trust income, and each maintained himself and his family. The trustees adopted the calendar year as the accounting period of the trust. At and prior to the time of the creation of the trust, petitioner owned all of the 1,000 shares of the P. D. George Company, and the stock at that time had a value of $700 a share. During the taxable year 1939 petitioner received $15,000 as salary from the P. D. George Company; dividends in the amount of $38,519.38, which included dividends from the P. D. George Company of $36,000; interest in the amount of $647.23; and trustee's fees in the trust, $960. Between December 23, 1939, the date of the creation of the trust, and December 31, 1939, the gross income received by the trustees amounted to $76,800, which they distributed before December 31, 1939. Of this amount, $74,880 was distributed to the seven sons. The balance was distributed to the trustees for their services. Petitioner reported in his gross income the $960 fee received by him, but did not report in his return any other part of the $76,800 income received by the trustees from the trust estate. The Tax Court held that the $76,800 gross income received from the trust estate by the trustees, less the $960 fee received by the petitioner as trustee, which he had already included in his tax return; to-wit, $75,840, was properly included by the commissioner in petitioner's income for the taxable year, expressing the view that he retained such interest in and control over the corpus and income of the trust as to render him taxable therefor as owner under Section 22 (a) of the Internal Revenue Code, 26 U.S.C.A. Int.Rev.Code, § 22(a).

In seeking reversal petitioner contends that: (1) gain derived from capital is taxable only to the owner of the capital; (2) petitioner having retained no control over the trust property equivalent to ownership, and being prohibited from realizing economic gain therefrom, is not taxable on the income of the trust as the owner of the corpus of the trust; (3) as the trust vested absolute ownership of the income for the year 1939 in the beneficiaries, and the grantor had no power to modify or change the ownership of that income, the 1939 income of the trust was not taxable to petitioner.

Section 22 (a) of the Internal Revenue Code defines gross income to include "gains, profits, and income derived from salaries, wages, or compensation for personal service * * *, of whatever kind and in whatever form paid, or from professions, vocations, trades, businesses, commerce, or sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property; also from interest, rent, dividends, securities, or the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever." The question is whether the grantor, notwithstanding the creation of the trust, may still be considered as owner of the property within the purview of this taxing statute. In considering this question resort must be had to the terms of the trust and the attendant circumstances, and where, as here, the grantor is a trust and the beneficiaries are members of his family, "special scrutiny of the arrangement" is necessary. Helvering v. Clifford, 309 U.S. 331, 60 S.Ct. 554, 556, 84 L.Ed. 788. Notwithstanding the trust instrument, the grantor retained control not only of the corpus but of the income, with the single exception that he might not himself benefit from the income or corpus of the estate, although under certain contin-

gencies it might be paid over and distributed to his heirs at law according to the laws of the State of Missouri. The grantor reserved the right (1) upon notice to substitute other beneficiaries in place of those named; (2) to add to the number of the beneficiaries and to direct the distribution of income of the principal otherwise than as provided in the trust instrument; (3) to alter or cancel the amount of income or principal to be distributed to or applied to the use of any of the beneficiaries; (4) to direct distribution of any share to a beneficiary who might then be entitled to the current income. The grantor was a person of substantial means quite outside of the trust property and at the time of the creation of the trust at least was receiving very substantial income. Under certain contingencies named in the trust instrument, in the event of the death of the grantor the entire corpus of the estate was required to be paid over and distributed to the persons who might then be the heirs at law of the grantor. Ordinarily, the person from whom property may be acquired under the law of descent and distribution is considered the owner; at least one may not by testamentary devise vest title in property which he did not own at the time of his death. Neither may property not owned by a grantor become vested in his heirs under the law of descent and distribution. The power to substitute other beneficiaries in place of those named in the trust was an attribute of ownership. The power to add to the number of beneficiaries and to distribute the income or principal, or both, "otherwise than as provided in the trust instrument," enabled the grantor to brush aside every provision and restriction in the instrument, except that provision which prevented him from enjoying personal profit or gain. Finally, he retained the power at any time to require that any share, which means the corpus of the estate, should be distributed "to a beneficiary who might then be entitled to the current income." In other words, he might, without violating any of the terms of the trust instrument, make any disposition which he pleased of both the corpus and the income of the estate at any time, on thirty days' notice, with the one exception named, and without regard to any potential rights of the beneficiaries named in the instrument because he had the right to substitute other beneficiaries, and having done so might than direct that the entire estate be distributed to such substituted beneficiaries. As he apparently had ample funds aside from the corpus of this estate, the restriction was, after all, quite a minor one. The named beneficiaries acquired only potential interests and no real ownership. The powers attributable to ownership remained in the grantor. It is here urged that the grantor did not retain complete control over the trustees. That would not seem to be material because he retained the absolute right to control the disposition of the trust property and its income without regard to any authority vested in the trustees. The Supreme Court in Helvering v. Clifford, supra, in referring to this statute said: "Technical considerations, niceties of the law of trusts or conveyances, or the legal paraphernalia which inventive genius may construct as a refuge from surtaxes should not obscure the basic issue. That issue is whether the grantor after the trust has been established may still be treated, under this statutory scheme as the owner of the corpus."

In Brown v. Commissioner of Internal Revenue, 3 Cir., 131 F.2d 640, cited by the Tax Court, the restrictions in the trust instrument were very similar to those in the instant case. In that case the grantor retained the power to modify the trust (1) by increasing the principal; (2) by changing both the beneficiaries and the purposes of the income payable except that such change could not be for the benefit or use of the settlor. She could substitute trustees and she could change the provision for disposing of the corpus at her death. The court held that the settlor of the trust was accountable for the income. In a very recent case, Foerderer v. Commissioner, 3 Cir., 141 F.2d 53, the court followed its decision in Brown v. Commissioner, supra, citing also Commissioner v. Buck, 2 Cir., 120 F.2d 775. In the Foerderer case, as in its predecessors, the grantor reserved power to shift the shares of beneficial interest in a family trust. Here, as has already been observed, the grantor reserved the power to direct the trustees to distribute free from trust any share of a beneficiary, in whole or in part, to the beneficiary then entitled to the income currently distributable therefrom. The instrument embodied in its terms the power to destroy the trust and all its terms and conditions except one—that the property could not be devoted to the personal use of the

grantor. Such power, embodying substantially all the attributes of absolute ownership, cannot under the circumstances disclosed in this case, be ignored.

In discussing the question of what might constitute economic gain, Mr. Justice Stone, now Chief Justice, in Helvering v. Horst, 311 U.S. 112, 61 S.Ct. 144, 146, 85 L.Ed. 75, 131 A.L.R. 655, among other things said:

"Admittedly not all economic gain of the taxpayer is taxable income. From the beginning the revenue laws have been interpreted as defining 'realization' of income as the taxable event, rather than the acquisition of the right to receive it. * * * But the decisions and regulations have consistently recognized that receipt in cash or property is not the only characteristic of realization of income to a taxpayer on the cash receipts basis. Where the taxpayer does not receive payment of income in money or property realization may occur when the last step is taken by which he obtains the fruition of the economic gain which has already accrued to him. * * *

"Underlying the reasoning in these cases is the thought that income is 'realized' by the assignor because he, who owns or controls the source of the income, also controls the disposition of that which he could have received himself and diverts the payment from himself to others as the means of procuring the satisfaction of his wants. The taxpayer has equally enjoyed the fruits of his labor or investment and obtained the satisfaction of his desires whether he collects and uses the income to procure those satisfactions, or whether he disposes of his right to collect it as the means of procuring them. Cf. Burnet v. Wells, supra [289 U.S. 670, 53 S.Ct. 761, 77 L.Ed. 1439].

"Although the donor here, by the transfer of the coupons, has precluded any possibility of his collecting them himself, he has nevertheless, by his act, procured payment of the interest, as a valuable gift to a member of his family. Such a use of his economic gain, the right to receive income, to procure a satisfaction which can be obtained only by the expenditure of money or property, would seem to be the enjoyment of the income whether the satisfaction is the purchase of goods at the corner grocery, the payment of his debt there, or such non-material satisfactions as may result from the payment of a campaign or community chest contribution, or a gift to his favorite son. Even though he never receives the money he derives money's worth from the disposition of the coupons which he has used as money or money's worth in the procuring of a satisfaction which is procurable only by the expenditure of money or money's worth. * * *

"The power to dispose of income is the equivalent of ownership of it. The exercise of that power to procure the payment of income to another is the enjoyment, and hence the realization of the income by him who exercises it. * * * We have held without deviation that where the donor retains control of the trust property the income is taxable to him although paid to the donee."

We conclude that the grantor within the ambit of the tax statute was the owner of the trust property and that he realized and enjoyed the income therefrom.

It is, however, urged that during the taxable year in question the grantor was unable to control the disposition of the income since the trust was not created until December 23, 1939 and to effect a change of beneficiaries a notice of thirty days was required. There was nothing in the trust instrument requiring the trustees to adopt the calendar year as the accounting period of the trust. They might have adopted as the fiscal year any other twelve month period within the calendar. Having held that the grantor because of the retention of power of control over the corpus and income of the trust remained the owner within the purview of the taxing statute, he was accountable for the income. The income had substantially all accrued at the time of the creation of the trust, and if the instrument be treated as evidence of a gift of that income for the taxable year 1939 to members of the grantor's family, it still remained taxable. Helvering v. Horst, supra; Harrison v. Schaffner, 312 U.S. 579, 61 S.Ct. 759, 85 L.Ed. 1055. As said by the Supreme Court in Helvering v. Clifford, supra: "That issue is whether the grantor after the trust has been established may still be treated, under this statutory scheme as the owner of the corpus."

Being the owner because of his control of the corpus, he is, we think, liable for the tax. McKnight v. Commissioner, 8 Cir., 123 F.2d 240; Commissioner v. Barbour, 2 Cir., 122 F.2d 165. We cannot say that the decision of the Tax Court is without "warrant in the record," nor that it is based upon a misconception of the

842

law. Dobson v. Commissioner, 320 U.S. 489, 64 S.Ct. 239; Cole's Estate v. Commissioner, 8 Cir., 140 F.2d 636. The decision is therefore affirmed.