## STOCKSTROM v. COMMISSIONER OF INTERNAL REVENUE.

### No. 12895.

Circuit Court of Appeals, Eighth Circuit

March 23, 1945.

Rehearing Denied April 18, 1945.

Richard A. Austin and Chase Morsey, both of St. Louis, Mo., for petitioner.

492

Melva M. Graney, Sp. Asst. to the Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key, J. Louis Monarch, and Harold C. Wilkenfeld, Sp. Assts. to the Atty. Gen., on the brief), for respondent.

David Baron, of St. Louis, Mo., amicus curiæ.

Before SANBORN, WOODROUGH, and JOHNSEN, Circuit Judges.

JOHNSEN, Circuit Judge.

The question is whether the Tax Court erred in holding that the control which petitioner had vested in himself as trustee over the corpus and the income of some trusts, created by him for his children and grandchildren, was equivalent practically, in the circumstances of the situation, to a retention of economic ownership of the property, so as to permit the income therefrom to be taxed to him personally under section 22(a) of the Internal Revenue Code, 26 U.S.C.A. Int.Rev.Code, § 22(a).[1]

The issue arises on a petition to review a decision of the Tax Court, 3 T.C. 255, which upheld a deficiency determination by the Commissioner in petitioner's income taxes for the years 1938 to 1941, inclusive. It was the Tax Court's view, from the terms of the trust and the circumstances of its creation and its operation in the family relationship, that petitioner still could be treated as the owner of the property for purposes of section 22(a) and the income therefrom taxed to him under the principles of Helvering v. Clifford, 309 U.S. 331, 60 S.Ct. 554, 84 L.Ed. 788.

Petitioner had been a successful businessman in St. Louis, Missouri, and at the time here involved was chairman of the board of directors of American Stove Company. By his own admission, he was "worth in excess of $1,000,000." He was also apparently an extensive and selective stockmarket investor, for the property which he put into the trusts consisted almost wholly of shares of capital stock in some forty or more industrial, utility, and securities corporations.

When the trusts were created, all of petitioner's children were over forty years of age and had their own households, and some of his grandchildren were approaching their majority. There was a separate trust for each of petitioner's three children and each of his seven grandchildren. All ten of the trusts were irrevocable, and petitioner was not to receive corpus or income from any of them. Each trust was to continue absolutely for the life of the child or grandchild-beneficiary, and on his or her death there were provisions for benefits and ultimate disposition to children or grandchildren of the primary beneficiary[2] or to their testamentary appointees or lineal descendants, which are not of present importance except to confirm that the trusts were intended for petitioner's family and that he was not to share in the income or get back any part of the corpus.

Petitioner, as we have suggested, constituted himself the sole trustee of all the trust estates during his lifetime. He also lodged in himself as trustee a dominion over the trust property far in excess of the normal fiduciary powers under traditional chancery concepts. Thus, he was authorized generally to deal with the corpus in the same manner as he "would have the right to do if he were the individual owner thereof". More specifically, he was not at all required to divulge the trusts, but was entitled to hold the original assets "without changing its record or registered owner", and to cause any subsequently-acquired property "to be registered or held of record in his own name or in the name of his nominee". He had the right to keep the trust property in his private possession and could remove it from the State of Missouri to "any other State of the United States of America". By the terms of the trust instruments he could accordingly take the property with him anywhere in the United States that he chose to move or go.

[1] § 22(a) provides in part that " 'Gross income' includes gains, profits, and income derived from * * * sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property; also from interest, rent, dividends, securities, or the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever."

[2] In the case of the trust for petitioner's only son, the latter's wife was on her husband's death also to have a share for life in the benefits of the trust property, but this fact is of no particular significance on the controlling question involved.

His power of investment similarly was "not * * * limited to investments of such nature as are now or may at that time be legally authorized for the investment of trust funds", and he was expressly authorized to buy and sell common or preferred stocks and debentures. To assist him in carrying on these market activities, he was entitled to subscribe for any investment service and employ any investment counsel that he might desire, and he could delegate to his investment counsel or agent "the right to execute any power, authority or discretion" which he possessed, except as to distributions of income or corpus. He could "cause to be organized or join in causing to be organized a corporation or corporations in any State or States of the United States of America and to transfer to any such corporation any part or parts of the assets of the trust estate either real or personal and receive in lieu thereof shares of stock in such corporations". He had the power to borrow money generally for the benefit of any of the trust estates; to mortgage or pledge its assets as security therefor; to compromise any claim of or against the trust estate; to determine "whether any loss to, expenditure from or funds borrowed for the benefit of the trust estate should be charged to the principal or income of the trust estate or apportioned between [them] * * * and the manner and extent of such apportionment"; and to pay any assessment, exercise any option, and consent to any corporate reorganization, consolidation or merger that he saw fit. He was authorized generally also to "determine whether any money or other assets received hereunder should be considered part of the principal of the trust estate or part of the income thereof or shall be apportioned between principal and income * * * and the manner and extent of such apportionment".

As to the income of the trusts for his children, petitioner had the right as trustee to make payments to the child-beneficiary (or in the case of the trust for his only son to the latter's wife) or to the child-beneficiary's children "in such relative proportions as the Trustee may determine", and "the decision of the Trustee as to the apportionment of income * * * and as to the date or dates respectively for disbursement of income shall be conclusive and binding on all parties in interest." As to the income of the trusts for his grand-children, petitioner as trustee could make payments to the grandchild-beneficiary or accumulate all or any part of the income during the lifetime of such beneficiary and "the Trustee shall decide as to the disbursement * * * of any current or accumulated income * * * and as to whether any income * * * shall be accumulated and the decision of the Trustee in such matter shall be conclusive and binding on all parties in interest". Income which had been accumulated in any of the ten trusts during the life of the primary beneficiary was on the latter's death to become part of the remainder, the same as principal. To the extent of his power as trustee to accumulate, petitioner thus could control the disposition of income as between life-beneficiary and remainderman (in addition to his power in the case of the trusts for his children, on any distribution of income made by him, to choose or apportion between the child-beneficiary and any or all of the latter's children). The record shows that during the taxable years involved, in both the trusts for his children and those for his grandchildren, petitioner had exercised a discretion as to the distribution to or the withholding of income from a primary beneficiary. The primary beneficiaries were not able to realize anything from the trusts, either directly or indirectly, except through distributions by the trustee, for the trust instruments all contained a spendthrift provision preventing the assignment of any interest in either principal or income and any seizure by attachment, garnishment or other process for a beneficiary's debt or liability.

The Tax Court said in its opinion: "The apparent purpose of the trusts * * * was to allocate the income from property owned by the donor-trustee-taxpayer to members of his immediate family * * * and at the same time to effect a retention by the donor during his life of control over that property equivalent for all practical purposes to the control which he held before the trust gifts, and a control over the amount of income available to the beneficiaries of the trusts thus established by him. * * * There is no question but that he had the broadest administrative powers over the trust corpus. His powers over the distribution of the trust income were * * * [also] substantial. * * * In all of the trusts the immediate payment of any income to any beneficiary was in

his sole discretion. While it is true that any trust income not paid out was to be accumulated in the trust, this retention of the power over the purse strings with regard to the members of his immediate family who were beneficiaries would warrant our conclusion that 'the direct satisfactions of pater familias are thus virtually undiminished, as are those indirect satisfactions * * * which the Supreme Court regards as noteworthy indicia of taxability.' See Commissioner·v. Buck [2 Cir., 120 F.2d 775] p. 778. When this power of the settlor-trustee over the distribution of the trust income is combined with extraordinarily broad administrative powers over the trust corpus, we can not escape the conclusion that the doctrine of Helvering v. Clifford [309 U.S. 331, 60 S.Ct. 554, 84 L.Ed. 788] is applicable and the incomes of the trust are taxable to the settlor."

From the broad expressions in the Clifford case and the (somewhat misty) welter of decisions in the Tax Court and the Circuit· Courts of Appeals, which have attempted to interpret and apply its principles, we are not able to say that the Tax Court has erred in appraising petitioner's "bundle of rights" in relation to the trust property and its income, as being equivalent for practical purposes under section 22(a) to a retention of economic ownership of the property.

The situation presented manifestly is one where a successful businessman has accumulated property beyond his individual needs and spending desires either permanent or transient; where the only satisfaction which he apparently is able to derive from the excess is the pride and prestige of its ownership and possession, the challenge and zest of employing it to beget more property and of continuing to vindicate his business skill with it, and the pleasure and power of regulatingly providing for or supplementing the wants and conveniences of the members of his family in their attained station; where he has reached the age in life when his property accumulation has commenced to exact part of its Faustian price in tax and distribution worries; where he is seeking to achieve a solution that will minimize the tax burden on his wealth and on the continued application of his earning powers and business skill to it, reasonably safeguard the economic position of the members of his family without effecting any practical change in his own, and at the same time leave him where he can still enjoy during his lifetime the pride and prestige of his previous ownership and· possession (by not having to divulge the trusts, by being privileged to hold title in his own name, and by being permitted to carry the property with him wherever he might choose to move or go in the United States), still enjoy the challenge and zest of employing the property to beget more property and of continuing to vindicate his business skill with it .(by having made the trusts consist of fluctuable corporate stocks, by being authorized to continue his stockmarket activities and to provide himself with any investment service or investment counsel he might desire, and by having the right to organize or join in organizing any corporations he might see fit), and still enjoy also the pleasure and power of regulatingly providing for or supplementing the wants and conveniences of the members of his family (by having the right to fix the time for the disbursement of any income in the trusts for his children and to shift any disbursements made from the child-beneficiary to any of the latter's children or to apportion it between them, and in the case of the trusts for his grandchildren to accumulate the income either wholly or in part); where by his power to fix the time for disbursement or to accumulate he is also able to control the ultimate disposition of the income. as between life-beneficiary and remainderman (by having provided that on the death of a life-beneficiary any income accumulated by the trustee should become part of the remainder); and where, on the basis of such a continued enjoyment of the outer attributes of his previous ownership and possession, and of such a continued right to apply his earning powers and business skill to the property for the zest of the game and the further incrementation of the family pile, and of such a continued substantial control over the disbursement, apportionment, and accumulation of the income, he is willing to commit the apparent prior use and purpose of the property to· a permanent dedication and to divest himself of the formality of legal title.

■ Petitioner argues that, since all his rights and powers with respect to the property have been vested in him as trustee and not retained by him as settlor, they cannot legally be related to his personal tax-situation, under the language in Beck-

er v. St. Louis Union Trust Co., 296 U.S. 48, 56 S.Ct. 78, 79, 80 L.Ed. 35, that "The effect is no different than if the trustee had been another person." But this expression of the Supreme Court was not made in relation to the issue of a settlor's taxability under section 22(a), nor have the Clifford case and the subsequent decisions of the Tax Court and of the Circuit Courts of Appeals treated it as having significance on that issue. That issue, as the Clifford case points out, 309 U.S. at pages 334 to 337, 60 S.Ct. at pages 556, 557, 84 L.Ed. 788, is whether on the circumstances surrounding the creation of the trust, the terms of the instrument generally, the incidents retained by the settlor or exercisable by him as settlor-trustee, the practical effect of the trust in the settlor's scheme of family economics, and any other relevant factors in the situation, the settlor can still be said to have such a bundle of rights or an aggregate of direct and indirect satisfactions as to be fairly equivalent for tax purposes under section 22(a) to a retention of economic ownership of the property.

█ This disposes also of petitioner's kindred argument that his control as settlor-trustee represents merely administrative powers for performing fiduciary functions, and that such powers, no matter how broad their scope, cannot, without doing legal violence, be equated into practical retention of economic ownership, where there is no right on his part to receive any part of the corpus or income of the trust. The Clifford case makes clear that the technical law of trusts is not necessarily the criterion of appraisal in a settlor's tax-situation under section 22(a), but that a practical evaluation is entitled to be made of all the benefits and satisfactions which a settlor is able to enjoy from the trust property, including the incidents of which he has chosen to retain control either as settlor or as settlor-trustee, and that all these elements properly may be aggregated and weighed against his previous title, use, and enjoyment of the property in the family relationship. As between a right retained by him as settlor and a power exercisable by him as settlor-trustee, the former per-

haps may have a more readily visible and measurable value than the latter, but there is no exclusionary rule (except as a limitation may be imposed by statute [3] or Treasury regulation) that prevents the consideration under section 22(a) of any element of control exercisable by a settlor, either directly or as settlor-trustee, in appraising his benefits and satisfactions from the trust property in the family situation. Certainly, what in the hands of an outsider-trustee may only amount to administrative powers over property can well as to a settlor-trustee have more than a fiduciary significance or value in the nexus of previous ownership, family economics, technical dedication, and continued control. This may particularly be true, it would seem, as to powers of control which are beyond those of conventional fiduciaryship under traditional chancery concepts, and even more so as to powers which, though purporting to be granted also to subsequent trustees, can have no meaning or value actually, except in the settlor's pre-emptive position of dedicator of the property and the hold of the family relations. Thus, in the present case, the right to conceal the trusts, to hold the property without fiduciary designation in instruments of title, to remove the assets from the State of Missouri, to carry on stockmarket and other plenary investment operations, to join in organizing new corporations, to deal with the property in any other way also as his own, to apportion or withhold income discretionarily, to accumulate income in favor of a remainderman as against a life-beneficiary, et cetera, can hardly practicably be regarded as powers that could or would be attempted to be exercised by a supervised commercial trust company (for which provision is here made as a successor-trustee) or which the settlor could have believed or intended would have any real significance except in his own hands.

█ But it is further argued that, even on the basis of all that we have said, there is nothing in the situation that enables petitioner to realize any economic gain or benefit from the trusts or from his administration of the assets, and that he therefore cannot be taxed on their income.

[3] For example, see 58 Stat. 51, 26 U. S.C.A. § 167(c), providing that income of a trust shall not be considered taxable to the grantor merely because in the discretion of the grantor acting as trustee it may be applied or distributed for the support or maintenance of a beneficiary whom the grantor is legally obligated to support or maintain, except to the extent that such income is so applied or distributed.

496

In addition to the broad expressions in the Clifford case, the Supreme Court has emphasized in Helvering v. Horst, 311 U. S. 112, 118, 119, 61 S.Ct. 144, 85 L.Ed. 75, 131 A.L.R. 655, that the dominant purpose of the revenue laws is the taxation of income to him who earns or otherwise creates the right to receive it and to enjoy the benefit of it when paid; that one who is the owner of property and makes a gift of it may be taxable on its income, notwithstanding the legal effectiveness of the gift, where he has retained control of the property; that, even if he has parted with title and general control of the corpus, he may similarly be taxable where he has retained the power to dispose of the income which the property produces; and that in either of these situations, though he has deprived himself of the right to receive either income or corpus, there may nevertheless be such enjoyment, and hence realization, of the income by him as is sufficient under section 22(a) to create taxability for it. Whether the control of corpus or the power to dispose of income in the present case was such as might create taxability against petitioner on either ground separately, we need not pause to consider, for the Tax Court rested its decision, not upon one of the grounds singly, but upon the combination of the two grounds that existed in the situation. And, without again detailing the incidents of each ground, it is sufficient here merely to reiterate that we are not able to say as a matter of law that the Tax Court has erred in appraising petitioner's control of the trust property and of its income as being so substantial in their existing combination as to be fairly equivalent, in direct and indirect satisfactions to him in the family relationship, to what he previously had and what the property had meant to him, and hence to a retention of its economic ownership for purposes of section 22(a). See Dobson v. Commissioner, 320 U.S. 489, 501, 64 S.Ct. 239, 88 L.Ed. 248; Tyson v. Commissioner, 8 Cir., 146 F.2d 50, 51; George v. Commissioner, 8 Cir., 143 F.2d 837, 841.

■ Petitioner argues, however, that the Tax Court was not warranted in declaring that "In all of the trusts the immediate payment of any income to any beneficiary was in his [petitioner's] sole discretion", since in the trusts for his children the power to disburse, allocate and withhold income was subject to the qualification, "it being the intent of Louis Stockstrom [petitioner] that the Trustete in deciding whether or not to disburse any income to or for the benefit of any beneficiary * * * or as to the amount of income to be disbursed * * * shall be guided by the need or needs of such beneficiary for funds in order that he or she may continue to live in a manner which in the opinion of the Trustee befits the standard of living of such beneficiary." The contention is that, in view of this provision, petitioner had no absolute power to allocate or withhold income in these trusts, if the beneficiaries were in need of funds. Any need of a beneficiary, however, was to be such as "in the opinion of the Trustee befits the standard of living of such beneficiary", and it was further provided that "The decision of the Trustee as to the apportionment of income * * * and as to the date or dates respectively for disbursement of income shall be conclusive and binding on all parties in interest." But, in any event, the fact that petitioner might not be able to act arbitrarily—as perhaps no trustee in exercising any discretion ever can—would not mean that he did not have the sole discretion, in a trust sense, as to the immediate payment of any income to any beneficiary, or that he did not have substantial powers over the distribution of income from the trusts, such as the Tax Court held that he had.

Finally, it is argued that the decision in the present case is irreconcilable with subsequent decisions of the Tax Court in other cases and ought therefore to be treated as having been repudiated. But the Tax Court has not purported to repudiate its decision here, nor can it be said to have departed from or to regard any of its subsequent decisions as being in conflict with it. In each situation it has attempted to appraise as an entirety the fagot of rights, powers, relationships, and satisfactions involved, and in no two cases have they been wholly identical. We shall not here undertake to strip down the various fagots of the cases with which the Tax Court has been confronted, for to do so would only tend to sink the general question in a "quagmire of particularities" and perhaps also to give to some particular element a definite and artificial value in another situation. It is to be wished, of course, that the field opened up by the Clifford case may come to have some definite monuments, but the doctrinal state in which the matter has been left by the Supreme

Court permits, for the present, of only a case-by-case progression "to determine precisely where the line shall be drawn between gifts of income-producing property and gifts of income from property of which the donor remains the owner, for all substantial and practical purposes." Harrison v. Schaffner, 312 U.S. 579, 583, 584, 61 S.Ct. 759, 762, 85 L.Ed. 1055.

It follows from all that has been said that, insofar as the decision of the Tax Court taxes to petitioner the income from the property which he placed in trust for his children and grandchildren and of which he constituted himself trustee, it must be affirmed. It appears, however, that the Tax Court has also taxed to petitioner, as did the Commissioner in his deficiency determination, the income from some property which the record indicates was added to the trusts by two of his children out of their own estates. There is no finding and no statement in the opinion of the Tax Court to suggest the basis of its action, but the matter seems simply to have been treated as part of the principal question. As to this income, the decision must accordingly be reversed, and the cause will be remanded for such further proceedings as may be necessary properly to dispose of the issue. Cf. Helvering v. Stuart, 317 U.S. 154, 167, 63 S.Ct. 140, 87 L.Ed. 154.

Affirmed in part, reversed in part, and cause remanded.

SANBORN, Circuit Judge (concurring).

The Tax Court decided that the income of the trust created by Louis Stockstrom was his income for purposes of taxation, under the doctrine of Helvering v. Clifford, 309 U.S. 331, 60 S.Ct. 554, 84 L.Ed. 788, regardless of the fact that he could not recapture either trust income or trust principal. The basis for the decision is that Stockstrom, as donor-trustee, retained such broad powers of control and distribution over trust corpus and income that the income was taxable to him, although he could have none of it for his own use. I think the Tax Court might well have decided this case in favor of the taxpayer, but the standard for determining to whom the income was taxable is presently so vague and indefinite that I have no conviction as to whether the decision of the Tax Court is, as a matter of law, right or

wrong. I therefore concur. I think it is unfortunate that courts which are required to determine such controversies as this must express opinions which are obviously little more than guesses. The number of cases in which the doctrine of Helvering v. Clifford, supra, is invoked indicates the difficulty which the Bench and Bar are having in applying that doctrine. See Shepard's United States Citations on 309 U.S. 331.