### EDISON v. COMMISSIONER OF INTERNAL REVENUE.

No. 13014.

Circuit Court of Appeals, Eighth Circuit.

April 23, 1945.

David Baron, of St. Louis, Mo., for petitioner.

Louise Foster, Sp. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key, A. F. Prescott, and Robert Koerner, Sp. Assts. to Atty. Gen., on the brief), for respondent.

Before GARDNER, THOMAS, and JOHNSEN, Circuit Judges.

JOHNSEN, Circuit Judge.

This is another in the cycle of cases arising out of Helvering v. Clifford, 309 U.S. 331, 60 S.Ct. 554, 84 L.Ed. 788, with which we recently have been confronted, involving the taxability of a donor under section 22(a) of the Internal Revenue Code, 26 U.S.C.A. Int.Rev.Code, § 22(a), on the income from some trusts created by him for members of his immediate family, and of which he has constituted himself trustee with broad powers of control. See George v. Commissioner of Internal Revenue, 8 Cir., 143 F.2d 837; Stockstrom v. Commissioner of Internal Revenue, 8 Cir., 148 F.2d 491; Funsten v. Commissioner, 8 Cir., 148 F.2d 805.

The Tax Court upheld the Commissioner's determination of a deficiency in petitioner's income taxes for the years 1938 to 1941 inclusive, on the basis of the income of the trusts, and the case is here for review of that decision.

Two separate trusts are involved. They were created in 1938, and by their terms were irrevocable. One was for the benefit of petitioner's son and the other for the benefit of petitioner's daughter. The son was in his twenty-third year at the time, and the daughter in her eighteenth year. Petitioner was a resident of Missouri. The son had his residence in New York and was married in 1940. The daughter was unmarried during the period involved and had her home with her parents.

The trusteed property consisted almost wholly of shares of capital stock in Edison Brothers Stores, Inc., a Delaware corporation, which was engaged in the operation of retail shoe stores throughout the United States but had its principal offices in St. Louis, Missouri, and of which petitioner was the president, a director, and a large stockholder. Prior to the creation of the trusts, petitioner was the owner of 40,576 shares of the total 385,490 shares of common stock which the corporation had outstanding, and of 50 shares of the total of 60,000 shares of outstanding preferred stock. He originally put a total of 5,000 shares of the common stock into the two trusts and later added another 2,500 shares to the son's trust and 2,000 shares to the trust for the daughter. The Tax Court observed in its opinion that "we think it fair to assume from the fact that he [petitioner] held such a large block of the stock, which was listed on the New York Stock Exchange, and undoubtedly widely held, and that he was an officer and director of the corporation, that he was at least one of the principal single shareholders," and that "Control of the trust stock, together with that which he continued to hold individually, may well have been of supreme importance to his economic welfare."

Petitioner obviously had no need for the income from the trust property to satisfy his personal wants, for his other net income during the taxable years involved was, respectively, $76,368.27, $75,737.38, $80,654.43, and $116,430.44.

In both of the trusts, petitioner had constituted himself the sole trustee, so long as he desired to serve. He had named successor-trustees also, but had further provided that "The grantor reserves unto himself at any time and from time to time during his lifetime the right and power to designate a trustee or trustees to act in lieu of those appointed trustees hereinbefore."

Under the trust instruments, the trustee was given "full and plenary powers of investment such as he would possess if he were the absolute owner of the 'trust estate' in his private individual capacity." He was not required to make statutory or conventional trust investments but could invest and reinvest in "bonds, stocks, notes, real estate mortgages or other securities or other property, personal or real." The plenary nature of his powers of control was repeatedly emphasized in the trust instruments, "it being intended hereby to give unto the said Trustee full and complete authority to hold, possess, manage, control, sell, convey, dispose of, encumber, lease, invest and reinvest the whole and every part of the said trust estate, according to his sole judgment and discretion." "The Trustee shall have full power without accountability for loss (whether through depreciation in value or otherwise), to retain at his discretion as investments of the trust estate any or all property, personal or real, that may come into his hands either at the beginning of this trust or at any time thereafter." It was further provided that "The Trustee shall have the power to determine whether any money or property coming into his hands shall be part of the capital or corpus of said trust estate or part of the income therefrom and to apportion between such capital and income any loss or expenditure in connection with such trust estate which in his opinion should be apportioned in such manner and division as to him may seem just and equitable."

From these sweeping powers of control and investment, it is evident that petitioner wanted to avoid the restraints of a conventional fiduciary-holding of property and to leave himself free to handle the property and to apply his personal skill and productive capacity, as an income and accumulation factor, in conjunction with the property, as he had been before the trusts were created. It is clear also that much of this power, such as his right to buy and sell stocks, notes, and any kind of real or personal property in general, though purporting similarly to be granted to successor-trustees, would and could practicably only serve a purpose in petitioner's pre-emptive position of dedicator of the property and the hold of the family relations, and was not power, as we observed in the Stockstrom case, which he could have believed or intended would have any real significance except in his own hands. This power to make the property subservient to his personal skill and earning capacity, and to enable him to continue his enjoyment of playing the commercial game with it, and to allow him to remain, far beyond the scope of traditional fiduciary concept and function, part of the tree itself for producing the fruit of income and accumulation, is, it seems to us, one of the material elements which may be considered in an economic weighing of the dedication which he has made against his previous ownership and title, and in the scrutiny of what he actually has parted with in the family situation and to what extent he has retained the substantial incidents and economic equivalent of what he formerly held and had enjoyed in relation to the property. And his optional right may passingly be re-noted, that "The Trustee shall have full power without accountability for loss (whether through depreciation in value or otherwise), to retain at his discretion as investments of the trust estate any or all property, personal or real, that may come into his hands either at the beginning of this trust or at any time thereafter", one of whose purposes manifestly was to enable him to hold the Edison Brothers Stores, Inc., stock, if for any reason it seemed of greater importance to him to do so than to undertake to traffic in other stocks or other property.

Passing to petitioner's power to control the disposition of income and of corpus, the trust for the son provided that "the trustee shall in quarterly or other convenient installments pay over to him all or such portion of the net income of the trust, as the trustee in his uncontrollable discretion shall think advisable or necessary for his comfort, support, education or ease," and "Any portion of the income not thus paid over * * * shall be added to the corpus of the trust fund." It was further provided that "If, in the uncontrollable discretion of the trustee, the trustee should deem it advisable or necessary for the greater ease or comfort of [the son], or for his business training, or to help him

start in business or some other vocation or profession, or for his education, maintenance or care, to encroach upon the corpus of the trust, the trustee is authorized in his uncontrollable discretion to pay over to [the son] all or such portion of the corpus of the trust as the trustee shall deem advisable or necessary."

The trust for the daughter provided that "Until said daughter * * * shall attain her majority, the trustee shall permit the net income of said trust to accumulate and as it accumulates it shall become part of the corpus of this trust." After the daughter attained her majority, there was a provision, similar to that in the trust for the son, covering the discretionary payment of income to her. But, as in the case of the son's trust, there was also a general provision which allowed the trustee at any time, as a matter of "uncontrollable discretion," to make payments of corpus to the daughter—concerning which the Tax Court properly observed: "The trust for the daughter provides that until she shall attain her majority, the trustee shall permit the net income to accumulate, and as it accumulates it shall become part of the corpus. * * * By its terms, the trust instrument gives him the power throughout the tax years to invade the corpus swollen by the absorption of the accumulated income. The practical effect of this power is to enable him to distribute the income to her at any time as 'corpus', so that this distinction between the two trusts is without reality."

Both trusts contained provisions for the disposition of any corpus that might be remaining in the trust after the death of the primary beneficiary, which are not of present importance, except to indicate that the property was not to revert to petitioner. There were spendthrift provisions also which prevented any anticipation or assignment by the beneficiaries and any seizure on behalf of creditors.

Summarizing, the situation presented is one where a father, with means beyond his needs, and with children who are approaching their starting age in life, desires to make provision, through the formality of a technical dedication of part of his accumulation, for continuing the economic station which they theretofore have enjoyed at his hands; where he desires to retain the same purse-string hold which he has previously had over them, to the extent of the dedicated property, by

leaving to his uncontrollable discretion the amount of income or of corpus that is to be paid to them at any time during his life; where he also desires to retain the same power of control over the property as he previously had (except that he is willing to limit its distribution and fruits to immediate-family purposes) by being allowed to retain in the trusts the stock of the corporation of which he was the chief executive officer—for any importance that the retention might have to him—"without accountability for loss (whether through depreciation in value or otherwise)," and by being authorized "to hold, possess, manage, control, sell, convey, dispose of, encumber, lease, invest and reinvest the whole and every part of the said trust estate, according to his sole judgment and discretion," and in this connection to exercise "full and plenary powers of investment such as he would possess if he were the absolute owner of the 'trust estate' in his private individual capacity"; where he has thus intended to avoid subjecting himself to the restraints of a conventional fiduciary-holding of property in his handling of the trust estates, and has designed to leave himself in the position to apply his personal skill and earning capacity as an income and accumulation factor, in conjunction with the property, the same as before the trusts were created; where he has retained the enjoyment of being able to play the commercial game with the property, and the satisfaction of continuing to vindicate his business skill with it and of allowing himself to augment the accumulation for members of his family; where, through his discretionary powers to accumulate or distribute and the spendthrift provisions preventing the obtaining of any indirect handhold on the part of the beneficiaries, he is able, if he chooses to do so, to make the trusts operate prospectively in favor of the remaindermen instead of currently for the primary beneficiaries, and thus to impart to the trust dedications the equivalent effect of a mere irrevocable testamentary disposition of the property and its accumulations; where he has thus manifestly intended that the property shall be made to serve practicably, in the family relationship, the same purpose, in the same manner, and with the same power and exercise of control as if no trust dedication existed; and where, on an evaluation of the whole situation under section 22(a), the Tax Court has concluded that, on the basis

of his general scheme of family economics, his recognition of a continuing parental solicitude and responsibility, the purpose which the property is being made to serve in relation to its previous use, the manner in which the purpose is being accomplished through continued control of the purse-strings in distribution, his right of free-play with the assets in income production and accumulation as well as general handling, and his power to make the trusts potentially operative in favor of remainder-men as against the primary beneficiaries equivalently as an irrevocable testamentary disposition, petitioner as a matter of economic and taxable reality has parted in effect with the formality of legal title only and has retained, within the purview of section 22(a), in the circumstances of the particular situation, the substantial equivalent, in control, satisfactions and economic significance, of his previous ownership.

 As we observed in Stockstrom v. Commissioner of Internal Revenue, 8 Cir., 148 F.2d 491, and Funsten v. Commissioner, 8 Cir., 148 F.2d 805, under our reading of the Supreme Court decisions, an owner who makes a gift in trust of property may still be taxable on its income, notwithstanding the legal effectiveness of the gift, where he has retained such control of the incidents and elements of his previous ownership, viewed in their practical significance in relation to the specific dedication, as to leave him in economic substance and result with what he previously had and enjoyed in the family situation. And, even though he may part also with control of the corpus of the gift as well as legal title, he equally may be taxable on the income which the property produces, where he has retained substantially his previous power, viewed in its practical significance in relation to the specific dedication, to command the disposition of the income. Cf. Helvering v. Horst, 311 U.S. 112, 61 S.Ct. 144, 85 L.Ed. 75, 131 A.L.R. 655.

 These are general principles which are applicable to any trust dedication in determining the donor's taxability on the income under section 22(a), except where a statute or a treasury regulation may have removed some particular situation from their operation and subjected it to a special rule. It is clear from the Clifford case, and from the effect of the decisions of the Supreme Court in other trust cases, that the mere fact that Con-gress, in sections 161 to 167 of the Internal Revenue Code, 26 U.S.C.A. Int.Rev. Code, §§ 161–167, has enacted some legislation relating to the taxation of trust income does not mean, as is at times still attempted to be argued, that it has intended thereby to remove the field of trust income generally from scrutiny by the taxing authorities and the courts under section 22(a). See 309 U.S. at pages 337 and 338, 60 S.Ct. 554, 84 L.Ed. 788. It is clear also, as we have indicated in Stockstrom v. Commissioner, 8 Cir., 148 F.2d 491, that the fact that the control of the property or the power to command its income has been lodged in the donor as self-constituted trustee, rather than formally retained by him as donor, does not exclude the application of the principles referred to above, but is at most an element of relativity in weighing the whole of a particular situation. The contention that a donor-trustee's control of dedicated property can never legally constitute anything more than administrative powers for performing fiduciary functions has been discussed in our opinion in the Stockstrom case, of which we quote here only a single sentence: "Certainly, what in the hands of an outsider-trustee may only amount to administrative powers over property can well as to a settlor-trustee have more than a fiduciary significance or value in the nexus of previous ownership, family economics, technical dedication, and continued control."

 It has been suggested that family relationship can have no sound significance on the question of the economic value of a donor's control of trust property, where he has no legal obligation to support the beneficiary. In the present case, petitioner's son, as previously noted, had attained his majority before the trusts were created, and the daughter also had ceased to be a minor during part of the tax years involved. The decisions, of course, do not purport to hold that family relationship as such or alone can afford a sufficient basis for taxing the income of a trust to the donor, where there is no legal obligation on his part to support the beneficiary, and where he has retained no substantial elements or incidents of control over the property or its income. But where there is a retention of substantial control over the trust property or its income, the degree of family relationship involved, even without legal obligation to support, may well serve to intensify the economic focus of,

and to bring into practical relief, the nature, purpose and effect of his control, in relation to his previous economic ownership and enjoyment. Where, for example, as in the present case, the trust dedication obviously has its root in a recognition of parental responsibility notwithstanding the fact of technical majority and a desire to continue at the donor's·hands the economic station to which his children have been brought, where the property after the dedication manifestly is being made to serve the same purpose in the donor's general scheme of family economics as it would have done if he had retained the legal title, where the donor has retained the power to regulate the purse-strings for his children in relation to the property the same as before, where he has not subjected himself to the conventional restraints of a fiduciary holding of property but has left himself free to handle it as his own, where he has made the property amenable to his personal skill and earning capacity as a factor in income production and accumulation increase, and where under the powers which he has retained he is also able, if he chooses, to make the trust dedication in effect an irrevocable testamentary disposition between remaindermen and the primary beneficiary in the family channel, we think the family relationship may properly constitute a material factor in the fact-trier's evaluation of whether the nature, purpose and effect of the donor's control of corpus and power to command income may fairly represent to him in the particular situation the economic equivalent of his previous ownership and enjoyment.

Under the Clifford case and the tide of subsequent decisions in the Tax Court and the Circuit Courts of Appeals, we cannot say—as we could not in the Stockstrom and Funsten cases—that the Tax Court's appraisal of petitioner's powers of control here, in the light of the relationships involved, the donor's general scheme of family economics, and the results to him in the particular situation, is without a rational basis of taxability under section 22(a).

It has been argued, as it was in the Stockstrom and Funsten cases, that the Tax Court's decision is in conflict with its conclusion on similar situations in other cases. But, as in the Stockstrom and Funsten cases, the subsequent decisions of the Tax Court do not purport to question or repudiate the evaluation made of the fagot in the entirety of the present case. The Tax Court has simply attempted in each of its decisions to appraise the rights, powers, relationships, satisfactions and benefits involved in the particular situation, and in no two cases have these been wholly identical. To attempt here to strip down the facts and circumstances of the various cases would only tend, as we said in the Stockstrom case, "to sink the general question in a 'quagmire of particularities' and perhaps also to give to some particular element a definite and artificial value in another situation."

The broad charge is made in petitioner's brief that "to tax him on the income from the trusts would violate cardinal principles of fundamental law and petitioner's rights under the Constitution of the United States [5th Amendment]." That Congress has the power to make the rights and privileges which a donor has retained in relation to property, though parting with its legal title, the basis for taxing the income of the property to him, where such rights and privileges may reasonably be found by the taxing authorities to have the equivalence of economic ownership of the property in the particular situation, there can be no doubt. Burnet v. Wells, 289 U.S. 670, 678, 679, 53 S.Ct. 761, 77 L.Ed. 1439. That Congress has intended so to do under section 22(a) of the Internal Revenue Code, we may not treat as an open question. Our function in the present case, therefore, is simply to check, as we have done, whether the appraisal which the Tax Court has made of the elements and incidents of control and of command of income, in relation to the terms, circumstances, relationships, object and effect of the particular dedication, is wholly arbitrary. Dobson v. Commissioner, 320 U.S. 489, 501, 64 S.Ct. 239, 88 L.Ed. 248; Tyson v. Commissioner of Internal Revenue, 8 Cir., 146 F.2d 50, 51; George v. Commissioner of Internal Revenue, 8 Cir., 143 F.2d 837, 841.

The decision is affirmed.