## SINOPOULO v. JONES, Collector of Internal Revenue.
### No. 3219.

Circuit Court of Appeals, Tenth Circuit.

March 21, 1946.

Chas. H. Garnett, of Oklahoma City, Okl., for appellant.

Hilbert P. Zarky, of Washington, D. C. (Samuel O. Clark, Jr., Asst. Atty. Gen., Sewall Key, J. Louis Monarch, and Newton K. Fox, Sp. Assts. to Atty. Gen., and Charles E. Dierker, U. S. Atty., of Oklahoma City, Okl., on the brief), for appellee.

Before PHILLIPS, HUXMAN, and MURRAH, Circuit Judges.

HUXMAN, Circuit Judge.

The question presented for decision in this case is whether income from two trusts for the years 1939, 1940 and 1941 is chargeable to the trustor under Section 22(a) of the Internal Revenue Code, 26 U.S.C.A. Int. Rev.Code, § 22(a). The facts were stipulated and are not in dispute. The facts necessary for consideration of the legal question are substantially these:

Appellant, Peter Sinopoulo, is a man of considerable means. On July 12, 1930, he transferred 250 shares of corporate stock of the Midwest Enterprise Company from his individual ownership to himself as trustee for his minor daughter Mary Betty Sinopoulo, now Wilson. In like manner, and at the same time, he transferred 250 shares of the same stock to himself as trustee for his other minor daughter, Patricia Peter Sinopoulo. He surrendered his individual stock certificates for this stock and had new certificates issued to himself as trustee. Subsequently additional shares of this stock were transferred by him to these two trusts. The manner in which this additional stock came into the trusts from him is not an issue in the case. On the same day, books of account were set up evidencing these trusts. Thereafter appellant made separate income tax returns for the trusts and the income therefrom was taxed to the trust estates.

Prior to December 14, 1939, no formal declaration of trust had been executed. Shortly before that date, his daughter, Mary, married against his will. Because of this, and for the purpose of protecting the trusts against misunderstanding because of lack of a written declaration, he consulted an attorney, who prepared a written declaration of trust for each trust, which he executed.

The two trust instruments involved in this controversy are identical and reference will be made to only one of them. The trust instrument provided that the income should be cumulative until the beneficiary reached the age of twenty-five years; that when the beneficiary reached that age, there should be paid to her the sum of $50 per month; that when she reached the age of thirty she should be paid $100 per month; that when she reached the age of thirty-five there should be paid to her $200 per month. The instrument provided that when the beneficiary reached the age of forty, the trustee, in his "sole discretion and judgment" could "terminate the trust

and turn over to the beneficiary the corpus," or he could "retain the corpus or principal of the trust for the balance of the lifetime of the beneficiary," and on her death the corpus then should be paid to her living children, if any, in equal shares, and that if she died without issue surviving her, the corpus should revert to the appellant, if living, or to his heirs if he died prior thereto.

The instrument further provided that appellant could not be compelled to terminate the trust or pay the principal thereof to the beneficiary during her lifetime. It also gave him the power solely at his discretion to advance to the beneficiary additional sums, either from income or profit. The trustee was vested with power to allot to any fund or share created thereunder an undivided interest in any property constituting a portion of the trust fund; to make joint investments for such funds or share; to make any division or distribution in kind or partially in kind and partially in money; to determine the value of any property so allotted, divided or distributed. It gave him absolute discretion in the investment of funds, free from statutory limitations regarding investments by trustees. He had power to cause any security which might at any time constitute a portion of the trust fund to be issued, held or registered in his own name or in the name of his nominee, or in such form that title would pass by delivery. It gave him absolute power to determine what was income and what was principal of the trust, subject to certain specified qualifications. The trust instrument provided for successor trustees and gave appellant the right to alter the trust as follows:

"The undersigned reserves the right at any time during his life, by an instrument in writing delivered to the said Mary Betty Sinopoulo and Patricia Peter Sinopoulo, to alter or modify this agreement in whole or in part including the power to change any trustee or successor trustee. The undersigned specifically reserves the right to add to this trust fund other property, which shall become subject to the terms of this trust, or by separate declaration of trust or modification hereof."

In 1935 appellant borrowed $9,500 from one trust and $11,000 from the other trust. In 1939 he borrowed $20,000 from one trust and $18,000 from the other trust. As of December 1, 1939, the two trusts showed total accumulations of $67,568.08, and total

loans to appellant of $58,500. Appellant paid interest on these loans, and in 1943, when informed by his counsel that he had no legal right to borrow these trust funds, he repaid the loans. On September 31, 1943, appellant resigned as trustee and the City National Bank and Trust Company of Tulsa, Oklahoma, was designated as trustee of both trusts.

After the execution of the trust instruments, Oklahoma passed a statute, effective August 21, 1941, providing that every trust created under the laws of Oklahoma "shall be revocable by the trustor, unless expressly made irrevocable by the instrument creating the same." 60 O.S.1941 § 175.41. Because of this statute, and of a doubt as to the construction that might be attempted to be placed upon the instrument, Mary instituted a suit in the District Court of Oklahoma County, Oklahoma, for herself and as the next friend of her minor sister, Patricia, against the appellant, asking for a construction as to the revocability of the trust and for a reformation thereof. Appellant filed a general denial in that action, admitting, however, the existence of the trusts. The record shows no further participation by him in that action. The trial court in this case, however, found that the action in the state court was an adversary proceeding. That finding is not challenged and is not in issue herein.

The state court in that action found that at the time of the creation of the trust, appellant intended and declared that the trusts were to be irrevocable and that the property transferred thereto was to be the absolute property of the beneficiaries, subject only to the retention by appellant of the legal title as trustee and to his control as trustee. The state court further found that the clause relating to the power of the appellant to modify, alter or revoke the trust was intended to be limited to the nomination by him of successor trustees and respecting changing the times of distribution of income to the beneficiary, and of increasing, but not diminishing, the amount of such distribution.

The court reformed the trust instrument by striking out the paragraph quoted above, relating to the right to modify or revoke, and substituted in lieu thereof the following:

"The trusts hereby created shall be and are irrevocable and the undersigned is without power to alter or modify this trust agreement in any respect whatever, except that he reserves to himself the right and power so long as he lives to remove from office any trustee and to name a new trustee or trustees and a new successor trustee or trustees, and to change the times of payment and to increase, but not to diminish, the amounts of the mandatory distributions out of income of the trusts to the beneficiaries, by delivering to each of said beneficiaries and to the then trustee or trustees a written instrument duly executed by him setting forth the changes so made by him in this agreement;"

The judgment of the court made the reformation retroactive and effective as of December 14, 1939, the date of the execution of the written declaration of trust.

The liability of appellant for the income tax chargeable to the income of the trusts for the years in question must be determined from the provisions of the trusts prior to their reformation by the state court. While the judgment of the state court made the reformation of the trusts retroactive and effective as of the date of the execution, this could not affect the rights of the government under its tax laws. It is a general rule that as between parties to an instrument a reformation relates back to the date of the instrument, but that as to third parties who have acquired rights under the instrument, the reformation is effective only from the date thereof.[1]

In Loggie v. Thomas, 5 Cir., 152 F.2d 636, it was held that a declaratory judgment of a state court rendered after federal income tax liability had accrued in a case in which neither the Collector nor the Commissioner was a party, was not res judicata in a suit in the federal court involving income tax liability and did not bind the government. Appellant's tax liability for the three years in question is to be determined from the provisions which he included in the declaration of trust which he executed, and not from what he intended to include therein.

Our opinion does not purport or intend to define or delimit the respective rights or liabilities of the parties for income taxes un-

---

[1] 53 C.J., Reformation of Instruments, p. 1055, § [233]B; Chapman v. Fields, 70 Ala. 403; Federal Land Bk. of Berkeley v. Pace, 87 Utah 156, 48 P.2d 480, 102 A. L.R. 819.

der the reformed trust instrument for years other than the three years in question. It is limited strictly to the three years in question herein.

 The general principles by which family relations, such as family trusts or family partnerships, are to be governed for federal income tax purposes have been quite clearly charted by the Supreme Court in a series of cases beginning with Helvering v. Clifford, 309 U.S. 331, 60 S.Ct. 554, 84 L.Ed. 788, and continuing to Commissioner of Internal Revenue v. Tower, 6 Cir., 148 F.2d 388. The right of a father to transfer a part of his property to a trust for the benefit of a member of his family and thereby relieve himself from income tax liability for the income thereof is recognized in all the decisions. That he makes himself the trustee of such trust, with absolute power of management, is not alone sufficient to charge him with the income of the trust for income tax purposes. We have adhered to this rule without exception.[2] But, as stated by the Supreme Court in the Clifford case, supra, technical considerations and niceties of the laws of trusts or conveyances or the legal paraphernalia which inventive genius may construct should not be permitted to obstruct the real issue, and, as pointed out, where the grantor is the trustee and the beneficiaries are members of his family, such an arrangement will be scrutinized very carefully to make sure that that which in reality is but a single unit is not multiplied into two or more by devices which, though valid under the state law, are not conclusive for the purposes of federal income tax liability under Section 22(a) of the Internal Revenue Code.

 The basis for holding a donor liable for income from a trust estate under Section 22(a) is continued ownership of the property or of an interest therein. This is the principle laid down in Helvering v. Clifford, supra; Helvering v. Horst, 311 U.S. 112, 61 S.Ct. 144, 85 L.Ed. 75, 131 A. L.R. 655; and Helvering v. Stuart, 317 U. S. 154, 63 S.Ct. 140, 87 L.Ed. 154. In considering whether such ownership continues to exist for income tax purposes, we disregard legal niceties and strict legal concepts of title. Especially is this so when we consider family trusts in which the father has transferred some of his income-producing property to a trust for the benefit of a close member of his family, and has made himself the trustee thereof with absolute powers of management. Ownership of property as a matter of law and ownership thereof for income tax purposes are not the same.[3]

The power to shift distribution of income or corpus from one beneficiary to another, to make investments, other than legal investments required of trustees, to accumulate income in favor of the remaindermen, to determine whether income shall be distributed or added to capital, and to alter or modify the trust instrument, have in numerous cases been held to constitute such power to command the trust income as to be the equivalent of the taxable enjoyment thereof.[4]

 The application of these principles to the trust in the instant case leads to the inescapable conclusion that appellant did not divest himself of all economic interest of benefit in the property or the income thereof. His power to control the distribution of the income, to accumulate income and add it to principal, to extend the trust for the lifetime of the beneficiary and thus prevent her from coming into the full enjoyment of the corpus, plus the income which he had the right to add to capital, to shift the ultimate enjoyment of the corpus from the beneficiary to remaindermen through the power to extend the period of the trust, to modify or alter the trust, in whole or in part, during the years in ques-

---

[2] See Jones v. Norris, 10 Cir., 122 F.2d 6; Armstrong v. Commissioner, 10 Cir., 143 F.2d 700; Hall v. Commissioner, 10 Cir., 150 F.2d 304.

[3] In Brown v. Commissioner of Internal Revenue, 131 F.2d 640, 641, the Third Circuit said: "Ownership, while based on facts is, we think, a legal concept. If a man has a sufficient number of the rights, powers, privileges and immunities with respect to a thing he is, in law, regarded as the owner of it. The number of units in the bundle which makes him an owner for the purpose of the property law does not necessarily control the question whether a different number of units makes him the owner with respect to liability for taxation * * *."

[4] See Hall v. Commissioner, 10 Cir., 150 F.2d 304; Foerderer v. Commissioner, 3 Cir., 141 F.2d 53; Stockstrom v. Commissioner, 8 Cir., 148 F.2d 491; Edison v. Commissioner, 8 Cir., 148 F.2d 810; George v. Commissioner, 8 Cir., 143 F. 2d 837; Losh v. Commissioner, 10 Cir., 145 F.2d 456; Miller v. Commissioner, 6 Cir., 147 F.2d 189.

tion, constituted such power to command the trust income as to be the equivalent of the taxable enjoyment thereof.

Affirmed.