**Kathryn GUTHRIE, Plaintiff.**

**v.**

**UNITED STATES of America, Defendant.**

**Civ. No. 2032.**

United States District Court
W. D. Arkansas,
Fort Smith Division.

March 2, 1967.

Hardin, Barton, Hardin & Jesson, Fort Smith, Ark., for plaintiff.

Robert L. Waters, Atty., Tax Div., Dept. of Justice, Ft. Worth, Tex., Charles M. Conway, U. S. Atty., Fort Smith, Ark., for defendant.

## OPINION

JOHN E. MILLER, District Judge.

On February 8, 1967, the plaintiff filed her motion for summary judgment under Rule 56, Fed.R.Civ.P., and on February 27, 1967, the defendant filed its motion for judgment on the pleadings under Rule 12, Fed.R.Civ.P. The attorneys for the parties have submitted excellent briefs in support of their respective contentions.

The facts are not in dispute. The plaintiff and Lee E. Guthrie were married on January 11, 1934, and lived together as husband and wife until April 17, 1960. Subsequent to April 17, 1960, but prior to December 13, 1960, the plaintiff and Lee E.. Guthrie entered into a Separation Agreement. Paragraph 3 of the Separation Agreement provided:

"It is agreed that the Husband will pay to the Wife for her support and that of the minor child, the sum of $150.00 per month, so long as the Wife remains unmarried or does not remarry. In the case of a divorce decree being granted to the Wife, then this agreement shall be carried forward into such decree and made a part of it."

On December 13, 1960, the plaintiff obtained a divorce in the Sebastian Chancery Court, Fort Smith District, from her husband, Lee E. Guthrie. The decree, inter alia, provides:

"The court finds that the parties have entered into a property settlement agreement between themselves, which said agreement has been offered in evidence in this case, by the terms of which the defendant, as husband, will convey all his right, title and interest in the homeplace" to Kathryn Guthrie. Mrs. Guthrie also awarded the household and kitchen furniture and a certain automobile. The decree further provides:

"It is further agreed in said separation agreement that the defendant will pay to the plaintiff, for her support and that of the parties' minor child, the sum of $150.00 per month as long as she remains unmarried."

For income tax purposes, both Mr. and Mrs. Guthrie, during the tax years of 1961, 1962, 1963 and 1964 treated the $150.00 per month as being $75.00 per month alimony and $75.00 per month child support. Mrs. Guthrie reported the sum of $75.00 as additional income, and Mr. Guthrie deducted, or otherwise excluded, the sum of $75.00 per month from his gross income as an alimony deduction. During the year 1965 the minor child attained her majority, and at that time Mr. Guthrie reduced the $150.00 per month payment to $75.00 per month without any court order. Later during the year Mr. Guthrie filed for a tax refund, claiming income tax overpayments in the years 1962, 1963 and 1964. The basis for his claim (which was allowed) was that the entire $150.00 paid each month was alimony.

On February 24, 1966, the plaintiff filed her petition in the Sebastian Chancery Court, seeking to correct an alleged error in the original decree as it related to the alimony and child support provisions. Mr. Guthrie was given notice of the filing of the petition but

filed no response thereto. On March 14, 1966, the court entered a Nunc Pro Tunc Order which, inter alia, provided:

## "II.

"That due to the scribner's [sic] error and other errors in drafting of the original decree, the amount of monies due and payable to the plaintiff by the defendant were joined together in one lump sum of $150.00 per month.

## "III.

"That the true intent of the court was that $75.00 per month was to be paid to the plaintiff by the defendant as alimony and that $75.00 per month was to be paid to the plaintiff by the defendant as child support payments. That this was the true intent and understanding of the parties is further evidenced by the fact that the defendant voluntary [sic] and without the approval or authority of this court reduced the amounts of the monthly payments from $150.00 per month to $75.00 per month upon the parties' minor child attaining her majority.

"It is therefore considered, ordered and decreed that the paragraph in the Decree of December 13, 1960, relating to the amount and type of payments to the plaintiff by the defendant is modified and corrected Nunc Pro Tunc to read as follows:

"It is further by the court considered, ordered and decreed that the defendant pay to the plaintiff the sum of $150.00 per month, with $75.00 per month designated as alimony to be paid as long as she remains unmarried, and $75.00 per month as child support for the parties' minor child."

The plaintiff's income tax returns for the years 1962, 1963 and 1964 were audited, and notwithstanding the Nunc Pro Tunc Order, the Director of Internal Revenue assessed deficiencies in income tax for the years involved against the plaintiff, contending that the entire $150.00 per month paid to her by her former husband was alimony and taxable to the plaintiff. The plaintiff paid the deficiency assessments and applied for a tax refund, which was denied. To recover the amount paid in satisfaction of the deficiency assessments, plaintiff commenced this action on November 15, 1966. Answer was filed January 16, 1967.

As heretofore stated, the plaintiff's motion for summary judgment is based on Rule 56, Fed.R.Civ.P., while the defendant's motion for judgment on the pleadings is based on Rule 12(c), Fed.R. Civ.P. As provided by Rule 12(c), the court is treating the motion as one for summary judgment.

The plaintiff on her brief states that the question to be determined by this court "is whether the Nunc Pro Tunc Order entered on March 14, 1966, is retroactive to December 13, 1960, so that the $150.00 monthly payments are designated as $75.00 per month alimony and $75.00 per month as child support." Of course, the plaintiff contends that the payment of $150.00 per month during the years involved herein was intended to be a payment of $75.00 per month alimony and $75.00 per month child support. In support of this contention the plaintiff cites several decisions of the Tax Court, as well as the case of Metcalf v. Commissioner of Internal Revenue, (1 Cir. 1959) 271 F.2d 288. The court has read with care the opinions in all the cases cited by plaintiff, but cannot agree that the Director of Internal Revenue was prohibited by the Nunc Pro Tunc Order from making the deficiency assessments for the years involved.

The governing statute is Sec. 71, Internal Revenue Code of 1954, 26 U.S.C.A. § 71 (1958 Ed.). In Mertens, Law of Federal Income Taxation, Code Commentary 1, § 71:7 the learned authors state:

"In no event does the statutory treatment here discussed apply to so much of a payment which, by the terms of the court decree or written instrument, is specified or identified to be payable for the support of minor children of the husband. To the extent that such portion is allocable to support of a minor child, the amount of

the payment is first attributed to that portion rather than to the portion allocable to the wife. The Regulations have pointed out, however, that if 'the periodic payments are received by the wife for the support and maintenance of herself and of minor children of the husband without such specific designation of the portion for the support of such children, then the whole of such amounts is includible in the income of the wife.' Whether a specific amount for support of children is designated or fixed sufficiently under this test remains to be ascertained, and has been a matter of considerable controversy, * * *."

The controversy referred to above appears to have been definitely settled in the case of Commissioner of Internal Revenue v. Lester, (1961) 366 U.S. 299, 81 S.Ct. 1343, 6 L.Ed.2d 306. In that opinion the court considered § 22(k) of the 1939 Internal Revenue Code, which in substance now appears as § 71, Internal Revenue Code of 1954. The court, after quoting at length from the hearings before the Senate Committee on Finance, beginning at page 304 of 366 U.S. at page 1346 of 81 S.Ct. said:

"It does not appear that the Congress was concerned with the perhaps restricted uses of unspecified child-support payments permitted the wife by state law when it made those sums includible within the wife's alimony income. Its concern was with a revenue measure and with the specificity, for income tax purposes, of the amount payable under the terms of the written agreement for the support of the children. Therefore, in construing that revenue act, we too are unconcerned with the variant legal obligations, if any, which such an agreement, by construction of its nonspecific provisions under local rules, imposes upon the wife to use a certain portion of the payments solely for the support of the children. The Code merely affords the husband a deduction for any portion of such payment not specifically earmarked in the agreement as payable for the support of the children.

"As we read § 22(k), the Congress was in effect giving the husband and wife the power to shift a portion of the tax burden from the wife to the husband by the use of a simple provision in the settlement agreement which fixed the specific portion of the periodic payment made to the wife as payable for the support of the children. Here the agreement does not so specifically provide. On the contrary, it calls merely for the payment of certain monies to the wife for the support of herself and the children."

In the concluding paragraph of the opinion, the court at page 306, 81 S.Ct. at page 1347 said:

"All of these considerations lead to the conclusion that if there is to be certainty in the tax consequences of such agreements the allocations to child support made therein must be 'specifically designated' and not left to determination by inference or conjecture. We believe that the Congress has so demanded in § 22(k). After all, the parties may for tax purposes act as their best interests dictate, provided, as that section requires, their action be clear and specific. Certainly the Congress has required no more and expects no less."

In the property settlement, as well as in the decree of divorce, it was only provided that the husband "will pay to the plaintiff, for her support and that of the parties' minor child, the sum of $150.00 per month as long as she remains unmarried." It was such uncertainty in tax consequences that the Congress intended to, and did, eliminate when it said that the child support payments should be "specifically designated." The written instrument or agreement which includes the provisions of the decree must "fix" that amount or the "portion of the payment" which is to go to the support of the child or children.

The next question for consideration is the effect of the entry of the Nunc Pro

Tunc Order. In the consideration of this question it must be borne in mind that the order was entered after the close of each of the taxable years.

In the case of Straight's Trust v. Commissioner of Internal Revenue, (8 Cir. 1957) 245 F.2d 327, the court had under consideration this identical question, and at page 329 said:

"The remaining issue here is what effect has the Iowa decree of reformation retroactively on the tax years 1947 and 1948. We pass to consideration of the effect of the Iowa Court's nunc pro tunc decree. The intention of that Court to include these tax years (1946–1948) is clear. The language of the decree 'nunc pro tunc' is definite. The broad rule as to the effect of a reformation decree is that it relates back to the date of the instrument reformed and is binding upon all except bona fide purchasers without notice 'and those standing in similar relations' —in short, covering those who have acquired some legal rights which would be destroyed or injured by subsequent reformation nunc pro tunc. It is clear that the main object and effect intended by the taxpayer in bringing and prosecuting the Iowa case was to lessen the national income tax for the years involved. The annual loss of income would be the difference between the tax calculated upon the entire income as a taxable unit and the tax on the same amount of income treated as derived from three taxable units, each having one-third of the total income. The situation which determined the application of the income tax to these two years had occurred and become fixed before this reformation proceeding was filed. We believe it cannot be altered by a nunc pro tunc decree of a state court. The national revenue is not subject to such control."

The Internal Revenue Service was not a party to the proceedings in the Chancery Court to obtain the Nunc Pro Tunc Order. In Emerson Institute v. United States, (1966) 123 U.S.App.D.C. 71, 356 F.2d 824, the court at page 826 said:

" * * * The law appears well established that a nunc pro tunc decree in proceedings to which the Internal Revenue Service is not a party is not binding on that Service for tax purposes. See Sinopoulo v. Jones, 154 F.2d 648 (10th Cir. 1946); Daine v. Commissioner of Internal Revenue, 168 F.2d 449, 4 A.L.R.2d 248 (2d Cir. 1948); M. T. Straight's Trust v. Commissioner of Internal Revenue, 245 F.2d 327 (8th Cir. 1957); see also Piel v. Commissioner of Internal Revenue, 340 F.2d 887 (2d Cir. 1965). The principle upon which the law is founded is succinctly stated in Sinopoulo v. Jones, supra:

" 'It is a general rule that as between parties to an instrument a reformation relates back to the date of the instrument, but that as to third parties who have acquired rights under the instrument, the reformation is effective only from the date thereof.' 154 F.2d at 650."

See also, Pinkney v. Commissioner, decided Dec. 9, 1965 (P.H.T.C. Memo. Dec., par. 65,317).

■ For the reasons hereinbefore stated, the court is of the opinion that the plaintiff is not entitled to recover. Therefore, the motion of plaintiff for summary judgment should be denied, and the motion of defendant for judgment on the pleadings should be granted and the complaint of plaintiff dismissed.

An order in accordance with the above is being entered today.