**J. John MARSHALL, et al., Plaintiffs,**

v.

**The UNITED STATES, Defendant.**

**No. 514–88C.**

United States Claims Court.

Oct. 4, 1990.

---

Donald E. Wertheimer, South Bend, Ind., for plaintiffs.

Catherine A. Christman, with whom were Asst. Atty. Gen. Stuart M. Gerson, David M. Cohen, Director, and Terrence S. Hartman, Asst. Director, Washington, D.C., for defendant.

## OPINION

ANDEWELT, Judge.

In this contract action, plaintiffs, Dr. J. John Marshall, Marjorie F. Marshall, and Dynatech Importation Leasing and Investment Corp., seek payment for damages that occurred to their property while in the control of the United States. This action is presently before the court on defendant's motion to dismiss or, in the alternative, for summary judgment on Count II, the sole remaining count in the complaint. For the reasons set forth below, defendant's alter-native motion for summary judgment is granted.

## I.

The material facts are not in dispute. On April 6, 1983, the United States District Court for the Northern District of Indiana issued a writ for the seizure of "starch blocker powder" which was in the possession of plaintiff Dr. J. John Marshall. The writ was based on a violation of the Federal Food, Drug and Cosmetic Act, 21 U.S.C. § 301 *et seq.* Pursuant to the writ, the United States Marshals Service seized 468 fiber drums containing "starch blocker powder," which were stored in a building at 2201 17th Street in Elkhart, Indiana. The building was owned by plaintiff Marjorie F. Marshall.

The government did not remove the seized drums from the building but instead changed the locks so that Dr. Marshall would have access to the building only with the permission of the Marshals Service. On June 27, 1985, United States Marshals Service officials met Dr. Marshall at the building. Upon entering, they discovered that part of the ceiling had collapsed and that much of the powder had suffered water damage. The powder ultimately was destroyed pursuant to a "Consent Decree of Destruction" dated April 8, 1986.

Plaintiffs filed their complaint in this court on October 24, 1988. The complaint contains two counts and seeks damages totalling $73,500. Plaintiffs broke down the damages, relating to both the building and the powder, as follows:

(a) Damage to roof and interior repairs = $ 2,500
(b) Value of materials destroyed = 50,000
(c) Loss of use of building, rental or alternative space; loss of rent caused by illegal seizure of building = 20,000
(d) Replacement of materials inside building illegally seized = 1,000

Count I of the complaint alleges tortious acts. On April 12, 1989, this court dismissed that count for want of jurisdiction. Count II alleges that "the continuing acts of the United States Marshal constitute an implied in fact contract of bailment" and

that the Marshal breached that bailment contract.

## II.

■ To establish an implied-in-fact contract, plaintiffs must demonstrate the same basic elements that are involved in an express contract—a mutual intent to contract including an offer, acceptance, and consideration. *Fincke v. United States*, 230 Ct.Cl. 233, 244, 675 F.2d 289, 295 (1982); *Llamera v. United States*, 15 Cl.Ct. 593, 596 (1988). Defendant's motion to dismiss for failure to state a claim and its alternative motion for summary judgment each focuses on those elements. Defendant contends the complaint should be dismissed for failure to state a claim because the complaint allegations do not support the existence of any of those basic elements. Alternatively, defendant contends summary judgment should be granted because the undisputed facts developed upon discovery demonstrate that plaintiffs cannot establish those elements.

A dismissal for failure to state a claim, like a grant of summary judgment, is a decision on the merits and is given *res judicata* effect. *See, e.g.,* 2A J. Moore, J. Lucas, and G. Grotheer, Jr., *Moore's Federal Practice* ¶ 12.07 [2.–5] at 12–63 (2d ed. 1990). In evaluating a motion to dismiss for failure to state a claim, the court must presume all factual allegations in the complaint are true and must make all reasonable inferences in favor of the nonmoving party. *Miree v. De Kalb County*, 433 U.S. 25, 97 S.Ct. 2490, 53 L.Ed.2d 557 (1977). After so interpreting the complaint, the court should deny a motion to dismiss for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99,

101–02, 2 L.Ed.2d 80 (1957). But "conclusory allegations unsupported by any factual assertions will not withstand a motion to dismiss." *Briscoe v. La Hue*, 663 F.2d 713 (7th Cir.1981), *aff'd*, 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983). "[L]egal conclusions, deductions, or opinions couched as factual allegations are not given a presumption of truthfulness." *Moore's Federal Practice* at 12–64.

■ Herein, the only allegation in the complaint that appears to suggest the existence of an implied-in-fact bailment agreement is the naked legal conclusion that the "continuing acts of the United States Marshal constitute an implied in fact contract of bailment." The only factual allegations in the complaint of continuing actions by the Marshal detail purely unilateral acts.[1] These acts do not suggest any mutual intent to enter a bailment arrangement, *i.e.*, they do not suggest the presence of the prerequisites of an implied-in-fact bailment contract—an offer, an acceptance, and the passage of consideration between the parties.

In any event, it is not necessary for this court to dissect each factual allegation in the complaint to determine whether, in total, the inferences that reasonably can be drawn from those allegations could possibly suggest a valid claim for an implied-in-fact contract of bailment. Defendant has conducted discovery and the factual and analytical bases of plaintiffs' claim have been fleshed out. In this context, instead of focusing on whether the complaint, viewed in isolation, is sufficient to state a claim, the court will consider the additional information supplied by the parties and resolve this action on summary judgment. For the reasons described in III, *infra*, the undisputed facts developed during discovery clearly demonstrate the absence of

---

1. The only "continuing actions" by the Marshal mentioned in the complaint are listed in paragraph 7, which states:

7. The U.S. Marshal's initial and continuing tortious acts were:
(a) Unauthorized retention of the building for an unreasonable period of time, and
(b) The repeated denial to Dr. and Mrs. Marshall and Dynatech of access to the building.

Dr. J. John Marshall, Marjorie F. Marshall and Dynatech assert that the U.S. Marshal was under a continuing duty as long as the property was in his custody and that he breached his duty of care. The U.S. Marshal's possession of the premises for over two years was unreasonable.

an implied-in-fact contract of bailment. Summary judgment in defendant's favor is therefore appropriate.

## III.

■ On summary judgment, the moving party bears the burden of establishing the absence of any genuine issue of material fact, and that it is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). That burden may be discharged by demonstrating that there is an absence of evidence to support the non-moving party's case, *i.e.*, an absence of evidence as to a material fact on which the nonmovant bears the burden of proof. *Id.* Herein, defendant has met that initial burden. In support of its motion, defendant submitted plaintiffs' answers to two interrogatories. In those answers, plaintiffs appear to concede that their allegation of an implied-in-fact contract of bailment is based exclusively upon unilateral conduct by defendant and not upon any meeting of minds involving an offer, acceptance, and consideration. The respective interrogatories and answers are as follows:

INTERROGATORY NO. 2:

Identify all agreements, understandings, or contracts, oral or written, that form the basis for plaintiffs' claim that a contract for bailment existed between plaintiffs and the United States Marshal's Service for storage of the "starch blocker powder." For oral agreements, state the name(s) of the person or persons with whom the agreement was made, and the date the agreement was reached. For written agreements, identify the parties to the agreement, the

date of the agreement, and produce a copy of the agreement.

RESPONSE:

There are none. The bailment relationship arose from the conduct of the defendant in exercising exclusive dominion and control over the subject building and its contents.

INTERROGATORY NO. 3:

Identify and explain in detail the basis for plaintiffs' assertion that the "continuing acts of the United States Marshal constitute an implied in fact contract of bailment." Identify the person or persons committing the acts, and the dates of the acts.

RESPONSE:

See answer to Interrogatory # 2.

But unilateral acts by the government alone are not sufficient. Absent some form of understanding between the parties, there can be no implied-in-fact bailment contract. *See Fincke*, 230 Ct.Cl. at 244, 675 F.2d at 295; *Llamera*, 15 Cl.Ct. at 596.

Where, as here, the moving party meets its initial burden on summary judgment, the response of "[t]he non-movant may not rest on its conclusory pleadings but, under Rule 56, must set out, usually in an affidavit by one with knowledge of specific facts, what specific evidence could be offered at trial." *Sweats Fashions, Inc. v. Pannill Knitting Co.*, 833 F.2d 1560, 1562–63 (Fed. Cir.1987), citing *Barmag Barmer Maschinenfabrik AG v. Murata Machinery, Ltd.*, 731 F.2d 831, 836 (Fed.Cir.1984). In their response to defendant's motion, to demonstrate a genuine issue of material fact plaintiffs rely upon four other interrogatory answers, set forth below.[2] But even

---

2. INTERROGATORY NO. 4:

Identify by name each employee of the United States Marshal's Service, or any other person purporting to act for the United States Marshal's Service, upon whose actions or comments the plaintiffs intend to rely in proving that an implied in fact contract of bailment arose between plaintiffs and the United States Marshal's Service. State specifically what those action[s] or comments were, and the dates upon which they occurred.

RESPONSE:

Jerome Perkins and persons acting on his behalf. Defendant has knowledge of, or ac-

cess to, information concerning its own agents and employees.

INTERROGATORY NO. 11:

Do plaintiffs contend that the collapse of the warehouse roof and resulting damage to the warehouse contents was the fault of the United States Marshal's Service? If so, explain in detail and substantiate the basis for plaintiffs' contentions.

RESPONSE:

Yes. Building was wrongfully seized. The court order did not provide for seizure of the building. Plaintiffs were denied access to and use of the building. Had this not happened,

when these answers are interpreted in the light most beneficial to plaintiffs, they do not suggest an implied-in-fact bailment agreement. In effect, in those answers plaintiffs take the position that (1) the court order related only to seizure of the "starch blocker powder" and not to the building, (2) the Marshals improperly denied plaintiffs' access to the building, and (3) had plaintiffs been granted access to the building, the damage to the building and the materials therein would not have occurred.

But even if plaintiffs could establish these three points they would not demonstrate an implied-in-fact bailment agreement. In effect, plaintiffs are simply challenging unilateral acts taken by the Marshals in a purported exercise of police power—the seizure of the building and the subsequent denial of access. Ordinarily, there would be no reason for law enforcement officers, when seizing and retaining goods pursuant to their police power, to extend any offer to enter into a bailment arrangement under which the government would assume binding contractual obli-

gations with respect to the care of plaintiffs' property. *Llamera,* 15 Cl.Ct. at 597. The interrogatory answers herein do not suggest any "extraordinary" offer by the government to assume such responsibilities. Nor do they suggest any voluntary act by plaintiffs which would manifest an intent to accept any such offer. *Id.* at 598. Finally, there is no suggestion of any consideration passing between the parties.

### Conclusion

For the reasons set forth above, defendant's motion for summary judgment is granted and the Clerk of the Court shall dismiss the complaint. No costs.

IT IS SO ORDERED.

plaintiffs would have had the opportunity to observe leakage at the time it started and to take preventative measures and carry out repairs. The materials that were lost could have been saved and the extensive damage to the interior of the building could have been prevented.
INTERROGATORY NO. 12:
After the "starch blocker powder" was seized, did plaintiffs reach any agreement or understanding with the United States Marshal's Service for gaining access to the warehouse? If so, state the date of such agreement, whether the agreement was oral or in writing, and the names of the person or persons with whom the agreement was reache[d].
RESPONSE:
No. On the contrary, efforts to reach some understanding were still in progress at the time entry was made and the damage discovered. Plaintiffs had made repeated requests for access that were denied. As of September 1985 defendants had indicated their willingness to consider granting access to the building if plaintiffs signed an agreement that would have waived any liability on behalf of the defendant for its wrongful seizure of, and control over, the building. The only understanding that was ever consumated [sic] was that the material could be inspected prior to execution of an agreement relating to the reprocessing of the material. It was during this

inspection that the damage was discovered. Because of the damage the reprocessing agreement was not executed by the plaintiffs, who, instead, and only because of the damage that had occurred, entered into a consent decree of destruction of the material.
INTERROGATORY NO. 13:
Do plaintiffs contend that they were prevented from gaining access to the warehouse? If so, state the date of each request that plaintiffs made for access to the warehouse, whether the request was written or oral, the name of the person or persons to whom the request was made, and the date upon which the request was denied. State also whether the request was denied orally or in writing, and the name of the person or persons who denied the request.
RESPONSE:
Yes. Numerous requests were made to the office of the U.S. Marshal formerly then later to U.S. Attorney. For example, conversations were held with U.S. Attorney David Kreider on September 5, 1985, and September 18, 1985. The denials were made orally. On September 5, 1985, it was stated to plaintiff J. John Marshal that he might be able to negotiate an arrangement to gain access to the building if he signed an agreement saying he had agreed to allow the material to remain in the building and had waived right of access to the building previously.