**PIKEVILLE COAL CO., et al., Plaintiffs,**

v.

**The UNITED STATES, Defendant.**

**No. 95–81T.**

United States Court of Federal Claims.

Jan. 14, 1997.

As Corrected Jan. 22, 1997.

Opinion Denying Reconsideration
Feb. 5, 1997.

Robert E. Glaser, Cleveland, Ohio, for plaintiffs.

George L. Squires, Washington, D.C., with whom were Assistant Attorney General Loretta C. Argrett, and Mildred L. Seidman, Chief, Court of Federal Claims Section. David Gustafson, Assistant Chief, of counsel, for defendant.

## OPINION

ROBINSON, Judge:

This tax refund case is before the court on defendant's motion to dismiss and plaintiffs' motion for partial summary judgment.

Plaintiff, Pikeville Coal Company,[1] seeks tax refunds for years 1978, 1979, and 1980. During the years in question, Pikeville was a wholly-owned domestic subsidiary of Stelco, Inc. ("Stelco"), a Canadian corporation. Plaintiff sold coal to Stelco. Plaintiff wants to correct the prices for which the coal was sold, thereby requiring a downward adjustment in its taxable income. The Internal Revenue Service ("I.R.S.") adjusted the coal prices. Plaintiff asserts that the adjusted coal prices are too high and that there should be a greater downward adjustment in its taxable income than that given by the I.R.S. Defendant argues that plaintiff has failed to state a claim upon which relief can be granted. According to defendant, 26 U.S.C. § 482[2] precludes plaintiff from reducing the prices at which it sold coal to its foreign parent. Plaintiff counters that section 482 is not the only applicable provision in this case. Plaintiff maintains that it seeks to correct a computational error.

The issues were fully briefed. Defendant filed a motion to dismiss on February 2, 1996, and plaintiff responded on March 7,

---

1. The other plaintiff is Stelco Holding Company. It was formed in 1981 and was not involved in any of the events that gave rise to this case. References to "plaintiff" are to Pikeville Coal Company.

2. Unless otherwise indicated, references to "§" or "section" are to the Internal Revenue Code of 1954, 26 U.S.C., as amended through the years in suit, 1978–1980.

 Section 482 provides:
 In any case of two or more organizations, trades, or businesses (whether or not incorporated, whether or not organized in the United States, and whether or not affiliated) owned or controlled directly or indirectly by the same interests, the Secretary may distribute, apportion, or allocate gross income, deductions, credits, or allowances between or among such organizations, trades, or businesses, if he determines that such distribution, apportionment, or allocation is necessary in order to prevent evasion of taxes or clearly to reflect the income of any of such organizations, trades, or businesses.
 26 U.S.C. § 482 (1980).

1996. Plaintiff also moved for partial summary judgment on March 7, 1996, and defendant responded on April 15, 1996. Oral argument was held on October 22, 1996. For the reasons that follow, the court denies defendant's motion to dismiss and denies plaintiff's motion for partial summary judgment.

### Background

During the years 1978 through 1980, plaintiff was a wholly-owned domestic subsidiary of Stelco. In 1973, plaintiff and Stelco entered into an agreement, whereby plaintiff sold and delivered to Stelco high volatile metallurgical grade coal. The coal was produced from plaintiff's Chisholm Coal Mine in Pike County, Kentucky ("Chisholm coal"). Paragraph 3 in the agreement provided:

> The price to be paid for coal delivered by Pikeville to Stelco hereunder for any twelve (12) month period commencing on the 1st day of January in each year during the term of this Agreement shall be determined by mutual agreement of the parties made on or before the 1st day of October immediately preceding such date, provided however that this date may be extended by mutual agreement. If during the term of this contract the parties are unable to agree on a price for any twelve (12) month period the price shall be that prevailing for the preceding twelve (12) month period.

Def.'s App. B at B4. The price Stelco paid plaintiff for the Chisholm coal was based on the quoted market price for coal produced from Pittston Coal Company's Moss #3 mine.[3] Stelco determined annually the price it paid plaintiff. Def.'s App. B at B11. Stelco notified Pikeville of the price and Pikeville agreed to it. *Id.* Stelco paid plaintiff $51.00 per ton in 1978, $51.00 per ton in 1979, and $52.00 per ton in 1980.

The I.R.S. audited plaintiff's federal income tax returns for 1978, 1979, and 1980. During the audit, plaintiff requested tax refunds because the price it charged Stelco for the Chisholm coal was in excess of fair market value. *Bakker Aff.*, Pl.'s Ex. A. The Revenue Agent recommended that plaintiff's sale of coal to Stelco should be reported at the current market price. Def.'s App. B at B72. The current market price was determined by an I.R.S. National Office study of coal prices within plaintiff's market area. *Id.* Plaintiff took this pricing matter to the Assistant Commissioner (International) for the final determination of the coal prices. Def.'s App. B at B83. The Assistant Commissioner (International), in accordance with Internal Revenue Manual ("IRM") 45(11)(25) (Rev. 11/24/87) and Delegation Order No. 173, has nationwide responsibility for resolving intercompany pricing issues as they relate to sections 482 and 613[4] of the Internal Revenue Code. *Id.* Plaintiff supplied data to the I.R.S. as to the quality and quantity of the Chisholm coal sold to Stelco. The I.R.S. Assistant Commissioner (International) applied the data to its pricing study on coal transfer prices for the same period, arriving at the following estimated fair market prices per ton sold to Stelco: $45.49 per ton in 1978, $45.91 per ton in 1979, and $46.24 per ton in 1980.

On October 19, 1990, the I.R.S. District Director mailed plaintiff a report proposing adjustments for taxable years 1972 through 1980. The District Director proposed reducing plaintiff's income for the years 1978 through 1980 to reflect his conclusion that the sale of coal to Stelco should be reported at the current market price. On December 18, 1990, plaintiff submitted a protest to the District Director because the I.R.S.'s proposed downward adjustments to plaintiff's prices were not large enough. Def.'s App. B at B95.

On September 29, 1992, plaintiff and the I.R.S. entered into a Form 870–AD agreement agreeing, with reservations, on the amounts of tax deficiencies and overassessments for years 1972 through 1980. The agreement reserved for plaintiff the right to file a timely claim for refund or credit or to

---

3. Due to the absence of a verified market price for Chisholm coal, plaintiff and Stelco used the Moss #3 quoted market price because the Moss #3 price was published regularly and could be easily obtained and verified. Also, Moss #3 coal was reasonably close to Chisholm coal in its metallurgical qualities. Def.'s App. B at B63.

4. Section 613 concerns percentage depletion. *See* 26 U.S.C. § 613.

prosecute a claim on the ground that the adjusted coal prices proposed by the I.R.S. were too high and that there should have been a greater downward adjustment in its taxable income. On September 30, 1992, plaintiff submitted tax refund claims for 1978, 1979, and 1980. Plaintiff asserted that the adjusted coal prices were too high.

On February 3, 1995, plaintiff filed a complaint seeking tax refunds for years 1978, 1979, and 1980. Plaintiff asserted that the price per ton for the Chisholm coal sold to Stelco should be $34.63 per ton in 1978, $38.43 per ton in 1979, and $40.75 per ton in 1980. Defendant then moved the court to dismiss plaintiff's complaint for failure to state a claim upon which relief can be granted pursuant to the Rules of the U.S. Court of Federal Claims ("RCFC") 12(b)(4) and 56(b). Plaintiff opposed defendant's motion to dismiss and moved for partial summary judgment.

### Contentions of the Parties

Plaintiff argues that taxpayers and the government must correct errors made in good faith in filing tax returns. Plaintiff maintains that section 482 is not applicable to this case because the Commissioner did not exercise authority under that section. According to plaintiff, there is no evidence that a section 482 allocation was made. Plaintiff maintains that its complaint states a claim upon which relief can be granted because it seeks to correct a computational error.

Even if section 482 applies, plaintiff asserts that there is a genuine issue as to material fact. In this case, there is a disagreement as to the fair market value of the coal. Plaintiff further maintains that there is always a material question of fact as to reasonableness when the Commissioner makes a section 482 allocation.

Finally, plaintiff claims that section 482 is not the only applicable section of the Internal Revenue Code. Plaintiff requests the court to grant partial summary judgment on defendant's claim that only section 482 is applicable in this case.

Defendant counters that section 482, case law, and Treasury Regulations preclude plaintiff from fictitiously and retroactively reducing the prices at which it sold coal to its foreign parent. Defendant maintains that section 482 provides for reallocation of income among commonly controlled organizations, at the Commissioner's discretion. According to defendant, section 482 is the only tool for changing transfer prices among related corporations to conform with fair market values. Furthermore, Treasury Regulation § 1.482–1(b)(3) provides that taxpayers cannot apply section 482 or require the I.R.S. to apply section 482. Defendant argues that plaintiff's complaint fails to state a claim because it is a petition to apply section 482 or require the I.R.S. to apply section 482.

### DISCUSSION

When considering a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to RCFC 12(b)(4), the factual allegations in the complaint are taken as true and all reasonable inferences are drawn in favor of the nonmoving party. *See Papasan v. Allain,* 478 U.S. 265, 283, 106 S.Ct. 2932, 2943, 92 L.Ed.2d 209 (1986) (discussing Federal Rule of Civil Procedure 12(b)(6)); *Marshall v. United States,* 21 Cl. Ct. 497, 499 (1990). The court may not dismiss a complaint "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957).

Summary judgment is appropriate when there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. RCFC 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986). Disputes over material facts that affect the outcome of the suit preclude an entry of judgment. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2509–10. These standards are generally applicable to motions for partial summary judgment as well. *Confederated Tribes v. United States,* 20 Cl.Ct. 31, 38 (1990). Because the court has considered filings outside the pleadings, the court will treat defendant's motion to dismiss as a summary judgment motion.

## I. *Section 482*

■ Section 482 enables the I.R.S. to reallocate income between two or more commonly controlled business organizations when such allocation "is necessary in order to prevent evasion of taxes or clearly to reflect income." 26 U.S.C. § 482; *see Merck & Co., Inc. v. United States,* 24 Cl.Ct. 73, 79 (1991). Section 482 is an income-correction device. *Morton–Norwich Prods., Inc. v. United States,* 221 Ct.Cl. 83, 602 F.2d 270, 274 (1979). The purpose of the provision is to allow the I.R.S. to treat controlled taxpayers [5] as if they were uncontrolled. *Ruddick Corp. v. United States,* 226 Ct.Cl. 426, 643 F.2d 747, 750 (1981); *E.I. Du Pont De Nemours & Co. v. United States,* 221 Ct.Cl. 333, 608 F.2d 445, 450 (1979). The Commissioner has broad leeway in applying section 482. *Merck,* 24 Cl.Ct. at 79.

■ When challenging a section 482 allocation, the burden of proof is on the taxpayer to show that the I.R.S. acted in an arbitrary manner. *Morton–Norwich,* 602 F.2d at 274. The taxpayer must overcome a presumption of correctness and establish that the Commissioner acted arbitrarily, capriciously, or unreasonably. *E.I. Du Pont,* 608 F.2d at 454–56; *Merck,* 24 Cl.Ct. at 79; *General Elec. Co. v. United States,* 3 Cl.Ct. 289, 291 (1983). Whether the I.R.S. exceeded its discretionary authority by making an arbitrary, capricious, or unreasonable allocation is a question of fact, not law. *Merck,* 24 Cl.Ct. at 79.

■ In a tax refund suit involving a section 482 allocation, the proceeding is *de novo.* *Merck,* 24 Cl.Ct. at 79. In order to prevail, the taxpayer must show that the I.R.S. action was arbitrary, capricious, or unreasonable and prove the correct amount of the tax and the resulting overpayment. *Id.* at 80.

### A. *Invocation of Section 482*

The parties do not dispute that taxpayers cannot invoke section 482 to reallocate income. The two issues in this case are whether section 482 was invoked by the I.R.S. and

whether section 482 is the only applicable provision in this case.

Plaintiff contends that the I.R.S. did not invoke section 482 when it adjusted plaintiff's income. Plaintiff argues that there was no reference to an allocation or reallocation in the Revenue Agent's Report. *See* Def.'s App. B at B72. The Revenue Agent did not explicitly mention section 482 in the report. There are, however, other references to section 482 in the record. Plaintiff's attorney referred to section 482 in his protest letter concerning the proposed tax audit adjustment. Def.'s App. B at B95. In addition, the I.R.S. Appeals Team Chief referred to section 482 in the supporting statement of his Appeals Transmittal Memorandum. Def.'s App. B at B90–91.

■ Plaintiff's counsel wrote in a protest letter dated December 18, 1990:

> The proposed adjustments result from a realization that the Taxpayer had sold coal to its parent, Stelco, Inc., a Canadian corporation, at prices in excess of fair market value. Because these sales were to a related party and because they were "cross border" sales, both Code section 482 and provisions of the U.S.–Canada Income Tax Treaty required the transfer price to be a fair market value price and Taxpayer endeavored to use a fair market price for reporting the transactions. However, Taxpayer erroneously used coal prices in excess of the fair market value price thereby erroneously inflating the taxable income reported in Taxpayer's returns.

Def.'s App. B at B95. Plaintiff's protest letter shows its awareness that section 482 was involved in this case.

The I.R.S. Appeals Team Chief wrote in the supporting statement to his Appeals Transmittal Memorandum dated October 6, 1992:

> The gross income issue resulted from Exam adjusting the price of Chisholm Mine metallurgical coal sold by [Pikeville] to its parent, Stelco, to reflect the current market price. The current market price was determined by an I.R.S. National Of-

---

**5.** A "controlled taxpayer" means "any one of two or more organizations, trades, or businesses owned or controlled directly or indirectly by the same interests." Treas.Reg. § 1.482–1(a)(4).

fice study of the price of metallurgical coal within the taxpayer's [Pikeville] market area....

The National Office study for coal pricing (as set forth in IRM 45(11)(25), (Rev. 11/24/87)) establishes intercompany pricing of the principal raw materials used to produce primary steel. This pricing study coordinates on an industry wide basis all cases involving the steel industry that have controlled issues involving I.R.C. §§ 613 and 482 relative to the pricing of the principal raw material used to produce primary steel.

Def.'s App. B at B90–91. In the above statement, the Appeals Team Chief explained the gross income issue in plaintiff's case. The supporting statement refers to sections 613 and 482. Section 613 concerns depletion, while section 482 applies to income. Section 482 is the relevant provision because depletion is not the issue in the above statement. The I.R.S.'s use of the pricing study demonstrates that section 482 was invoked.

Plaintiff maintains that the I.R.S. accepted plaintiff's assertion that a mutual computation error had been made. There is no documentary evidence that the I.R.S. accepted plaintiff's assertion. The record contains only the uncorroborated testimony of Stelco's General Manager. *See Bakker Aff.*, Pl.'s App. A at 1; *cf. Montgomery Coca–Cola Bottling Co. v. United States*, 222 Ct.Cl. 356, 615 F.2d 1318, 1332 (1980) (finding trial judge erred in relying on testimony as to plaintiff's intent rather than on objective documentary evidence of plaintiff's business operations). The court is not persuaded by plaintiff's uncorroborated statement. The court finds that the I.R.S. used section 482 to adjust plaintiff's income.

**B. *Applicable Law***

There is a dispute over whether section 482 is the only applicable law in this case. The authority of the Commissioner under section 482:

> to determine true taxable income extends to any case in which either by inadvertence or design the taxable income, in whole or in part, of a controlled taxpayer, is other than it would have been had the taxpayer in the conduct of his affairs been an uncontrolled taxpayer dealing at arm's length with another uncontrolled taxpayer.

*Ruddick Corp. v. United States*, 226 Ct.Cl. 426, 643 F.2d 747, 750 (1981) (quoting Treas. Reg. § 1.482–1(c)) (emphasis omitted). In the instant case, plaintiff alleges that it mistakenly charged its parent prices that were not the fair market value of the coal. In other words, by inadvertence, plaintiff did not conduct its affairs with its parent in an arm's length manner. Therefore, section 482 is available to the I.R.S. to correct such a mistake.

Even though section 482 applies to this case, plaintiff contends that it may use section 61 [6] to correct an error in its tax return. Plaintiff's legal authority for its argument is distinguishable. Plaintiff's argument fails to distinguish between contracts made between unrelated parties dealing at arm's length and transactions between parties owned or controlled by the same interests.

■ Plaintiff relies on the so-called *Danielson* rule for the proposition that a taxpayer "can challenge the tax consequences of his agreement as construed by the Commissioner only by adducing proof which in an action between the parties to the agreement would be admissible to alter that construction and to show its unenforceability because of mistake...." *Commissioner v. Danielson*, 378 F.2d 771, 775 (3d Cir.1967); *see International Paper Co. v. United States*, 33 Fed.Cl. 384, 391 (1995) (stating that the Federal Circuit and the Court of Federal Claims have adopted the *Danielson* rule). The *Danielson* rule allows a taxpayer to use evidence that would be admissible in a suit between the parties to an agreement. It is unlikely that two related companies would sue each other for breach of contract. Plaintiff maintains that it may prove that it and its parent, Stelco, intended to buy and sell coal at fair market value and that they mutually misestimated the value of the coal. The *Danielson* rule applies to unrelated entities because they have adverse interests. Related companies do not have adverse interests. *See*

---

**6.** Section 61 provides the general definition of gross income. 26 U.S.C. § 61.

*Merck,* 24 Cl.Ct. at 79. In *Danielson,* one unrelated entity bought stock in a corporation and a covenant not to compete from several stockholders. 378 F.2d at 773. *Danielson* concerned the tax treatment of certain payments that were recited in the covenants not to compete. *Id.* at 773–74. *Danielson* "requires that the tax effects of an agreement flow strictly from the agreement as written." *Lane Bryant, Inc. v. United States,* 35 F.3d 1570, 1573 (Fed.Cir.1994) (emphasis omitted). The agreement in question in *Danielson* was between unrelated parties. Plaintiff has not cited any cases applying the *Danielson* rule to agreements between related entities, much less controlled taxpayers. The court holds that the *Danielson* rule does not apply to transactions between entities owned or controlled by the same interests.

Plaintiff cites cases, such as *Appeal of Union Metal Mfg. Co.,* 1 B.T.A. 395, 399 (1925), and *Barnhill v. Commissioner,* 241 F.2d 496, 499 (5th Cir.1957), for the proposition that a taxpayer may demand a correct computation of his tax for a past year on the facts as they existed. In *Union Metal,* the court held that a taxpayer, which had failed to claim a deduction for the depreciation of its patent, has the right to claim a depreciation deduction in an amended tax return. 1 B.T.A. at 399. In *Barnhill,* the Fifth Circuit held that where allowance of a deduction required the taxpayer to make a timely election, the taxpayer's failure to make the election was fatal to the allowance of the deduction. 241 F.2d at 499. *Union Metal* and *Barnhill* concern tax deductions and amended returns. Plaintiff's authorities, however, do not address whether a taxpayer may correct the price at which goods or services are transferred between commonly controlled entities.

Plaintiff also relies upon the Restatement (Second) of Contracts. Plaintiff contends that the court may reform a contract on the grounds of mutual mistake. According to plaintiff, where a contract fails to express the intent of the parties because of a mistake of both parties, the contract may be reformed. *See* Restatement (Second) of Contracts § 155. The Restatement (Second) of Contracts does not discuss whether reformation of a contract may have a retroactive effect on third parties such as the United States. In *Sinopoulo v. Jones,* 154 F.2d 648 (10th Cir. 1946), a revocable trust instrument was made irrevocable by a retroactive, *nunc pro tunc* state court order. The federal tax consequences that might have flowed from the trust being irrevocable were held not to flow. *Id.* at 650. The tax consequences flow from the deal actually entered into. *See Commissioner v. National Alfalfa Dehydrating & Milling Co.,* 417 U.S. 134, 149, 94 S.Ct. 2129, 2137–38, 40 L.Ed.2d 717 (1974) (citations omitted) ("This Court has observed repeatedly that, while a taxpayer is free to organize his affairs as he chooses, nevertheless, once having done so, he must accept the tax consequences of his choice, whether contemplated or not, and may not enjoy the benefit of some other route he might have chosen to follow but did not."). As stated by the Court of Claims, "The inability of a taxpayer to restructure the form of its transactions for tax purposes though the IRS may very well be permitted to do such has long been a part of our tax law...." *Morton–Norwich Prods., Inc. v. United States,* 221 Ct.Cl. 83, 602 F.2d 270, 275 (1979).

Plaintiff submits Rev.Rul. 71–416, 1971–2 C.B. 83, as an example of a situation where an error can be corrected. The revenue ruling carves a limited exception to the rule set forth in I.T. 4108, 1952–2 C.B. 113, that the determination of federal income tax consequences is not controlled by retroactive judgments of state courts. Rev.Rul. 71–416 permits retroactive effect for federal income tax purposes of a *nunc pro tunc* order by a state court to correct an original divorce decree that contained a mathematical error and, therefore, failed to express the true decision of the court. Rev.Rul. 71–416 is a limited exception that does not apply to plaintiff's situation.

■ Plaintiff seeks to correct the prices it charged its parent to reflect the fair market value of the coal. Plaintiff maintains that the coal purchase agreement between itself and its parent required the coal prices to be the fair market value. The coal purchase agreement does not mention that the coal prices

should be at the fair market value. Instead, the coal purchase agreement states that the transfer price would be "determined by mutual agreement of the parties." Def.'s App. B at B4. Plaintiff contends that it and its parent, Stelco, mistakenly believed that the price for Moss # 3 coal sold by the Pittston Coal Company was a reasonable indicator of the fair market value of plaintiff's coal. Section 482 was enacted to give the Commissioner authority to determine taxable income in a case where by inadvertence or design the taxable income of a controlled taxpayer "is other than it would have been had the taxpayer in the conduct of his affairs been an uncontrolled taxpayer dealing at arm's length with another uncontrolled taxpayer." *Ruddick Corp. v. United States*, 226 Ct.Cl. 426, 643 F.2d 747, 750 (1981) (quoting Treas.Reg. § 1.482–1(c)) (emphasis omitted). Even if plaintiff inadvertently treated its parent in a non-arm's length manner, section 482 applies.

Section 482 in the Internal Revenue Code is the specific provision that may be used to adjust the prices at which goods and services are transferred between entities owned or controlled by the same interests. It is a well-recognized rule of statutory construction that a specific provision controls when the same subject matter is addressed by a more general provision. *See Bulova Watch Co. v. United States*, 365 U.S. 753, 758, 81 S.Ct. 864, 867–68, 6 L.Ed.2d 72 (1961) (holding that interest accruing on an overpayment of taxes attributable to an unused excess profits credit carry-back was governed by a specific provision of the Internal Revenue Code, rather than by a general provision); Norman J. Singer, *Sutherland Statutory Construction* § 40.02 (5th ed. 1992). In the instant case, section 482 is the specific applicable provision that governs plaintiff's situation, even if the same subject matter is addressed by the more general section 61. *See Rubin v. Commissioner*, 429 F.2d 650, 653 (2d Cir. 1970) ("Resort to 'common law' doctrines of taxation and the broad sweep of § 61 ... have no place where, as here, there is a statutory provision [§ 482] adequate to deal with the problem presented.").

1. The court will consider defendant's motion un-

### C. *Questions of Fact*

■ Even though the court holds that section 482 is the only applicable law in this case, this does not dispose of the case. The court must determine whether there is a genuine issue of material fact in dispute in adjudicating defendant's summary judgment motion. There are disputes over material facts. The parties dispute the fair market value of the coal. Both parties should be allowed at trial to present evidence of the fair market value of plaintiff's coal. Furthermore, there is a dispute over the reasonableness of the Commissioner's section 482 allocation. Whether the Commissioner exceeded his discretionary authority by making an arbitrary, capricious, or unreasonable allocation is a question of fact. *Merck & Co., Inc. v. United States*, 24 Cl.Ct. 73, 79 (1991). At trial, the plaintiff has the burden of proving that the Commissioner acted in an arbitrary manner. *Morton–Norwich Prods., Inc. v. United States*, 221 Ct.Cl. 83, 602 F.2d 270, 274 (1979).

### CONCLUSION

After careful review of the parties' briefs, exhibits, and oral arguments, the court concludes that trial is necessary to determine the fair market value of plaintiff's coal and the reasonableness of the Commissioner's section 482 allocation. Accordingly, the court DENIES defendant's motion to dismiss and DENIES plaintiff's motion for partial summary judgment.

The parties shall file a joint status report within thirty days of this Opinion informing the court of their settlement negotiations, and proposing an Appendix G schedule for trial.

### ORDER ON RECONSIDERATION

On January 14, 1997, with correction filed January 22, 1997, this court issued an Opinion in this tax refund case denying defendant's motion to dismiss plaintiff's complaint. On January 24, 1997, defendant filed a motion for reconsideration in part pursuant to Rules of the United States Court of Federal Claims ("RCFC") 42(c) and 83.2(f).[1] Defen-

der RCFC 83.2(f) only. RCFC 42(c) is not appli-

dant asserts that the reasoning of the court's Opinion calls for dismissal of plaintiff's complaint. According to defendant, this court "does not have the Commissioner's authority to reallocate income" under section 482 and "is authorized only to approve or disapprove the reallocation that the Commissioner made." *Motion by Def. for Recons. in Part* at 3. For the reasons that follow, defendant's motion is denied.

 A motion for reconsideration is addressed at the discretion of the court. *Yuba Natural Resources, Inc. v. United States,* 904 F.2d 1577, 1583 (Fed.Cir.1990). For a movant to prevail, he must point to a manifest error of law or mistake of fact. *See Principal Mut. Life Ins. Co. v. United States,* 29 Fed.Cl. 157, 164 (1993). The court will not grant a motion for reconsideration if the movant "merely reasserts ... arguments previously made ... all of which were carefully considered by the [c]ourt." *Id.* (quoting *Frito–Lay of Puerto Rico, Inc. v. Canas,* 92 F.R.D. 384, 390 (D.P.R.1981)).

 This is an unusual tax refund case. Defendant's counsel stated at the October 22, 1996 oral argument that this was the only case he had ever seen where the Internal Revenue Service ("I.R.S."), during an audit, voluntarily made a section 482 reallocation that reduced a taxpayer's taxable income. *Tr.* 6. Because the court is faced with a novel situation, there is no binding case law directly on point holding that a taxpayer cannot challenge the reasonableness of the Commissioner's reduction. In this case, the Commissioner exercised his discretion under section 482 when he adjusted plaintiff's income. Plaintiff argues that the reduction was not large enough. Plaintiff has the burden of overcoming a presumption of correctness and proving that the Commissioner acted arbitrarily, capriciously, or unreasonably. *Merck & Co., Inc. v. United States,* 24 Cl.Ct. 73, 79 (1991). Plaintiff must prove the correct amount of the tax and the resulting overpayment. *Id.* at 80. In this case, it is necessary to consider the fair market value of the coal sold to plaintiff's parent in deter-

mining whether the Commissioner's adjustment was within the zone of reasonableness.

For the reason noted, defendant has been unable to cite case law that explicitly prevents the court from determining the fair market value of the goods transferred and the reasonableness of the Commissioner's reallocation. Instead, defendant has cited opinions where the court either approved or disapproved the reallocation. *See E.I. Du Pont De Nemours & Co. v. United States,* 221 Ct.Cl. 333, 608 F.2d 445, 455 (1979); *Young & Rubicam, Inc. v. United States,* 187 Ct.Cl. 635, 410 F.2d 1233, 1245–47 (1969); *Merck & Co., Inc. v. United States,* 24 Cl.Ct. 73, 91 (1991). Based upon the court's own research, this court, in the past, has not been called upon to reallocate income; however, the Seventh Circuit and the Tax Court have allowed courts to reallocate income in a section 482 case when necessary. *See Eli Lilly & Co. v. Commissioner,* 856 F.2d 855, 860 (7th Cir.1988) ("Where the evidence shows that neither side is correct, we think it would be unreasonable to restrict the court to acceptance or rejection of the Commissioner's position in its entirety, rather than allowing the court to reallocate 'in a manner the evidence ... demonstrates to be correct.' *Nat Harrison Assocs., [Inc. v. Commissioner of Internal Revenue,]* 42 T.C. [601] at 618 [ (1964) ]."); *Baldwin–Lima–Hamilton Corp. v. United States,* 435 F.2d 182, 187 (7th Cir.1970) (holding that district court has the power to decide what portion of subsidiary's income should be reallocated to its parent). Accordingly, there is no reason to grant defendant's motion for reconsideration.

### CONCLUSION

Because defendant has failed to point to a manifest error of law or mistake of fact in the court's January 14, 1997 Opinion denying defendant's motion to dismiss, defendant's motion for reconsideration is DENIED.

In accordance with the January 14, 1997 Opinion, the parties shall file a joint status report within thirty days of this Order informing the court of their settlement negotia-

cable here because it pertains to motions for reconsideration filed after a determination of lia-

bility when liability and damages are separate phases of trial.